## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GEORGE LIONEL MONCADA | § | CASE NO. 19-33426 |
| | § | CHAPTER 7 |
| | § | |
| DEBTOR | § | CHIEF JUDGE DAVID R. JONES |

### TRUSTEE' MOTION FOR SHOW CAUSE ORDER

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

*Due to the copying and postage costs copies of the exhibits referenced herein, although filed with the Court and served via the CM-ECF system are not included with the pleading mailed to parties-in-interest. If you want a copy of the exhibits referenced herein, please email mmyers@rossbanks.com and an electronic copy will be provided to you.*

COMES NOW, Ronald J. Sommers, Chapter 7 Trustee (the "Trustee") for the above-referenced case and would show as follows:

### A. Background

1.      On June 20, 2019 (the "Petition Date"), George Lionel Moncada (the "Debtor") filed for voluntary Chapter 7 relief in the above-referenced Chapter 7 case.  On the same date, Janet Casciato-Northrup was appointed interim Chapter 7 Trustee.  The Debtor had previously sought, and received, discharge relief in bankruptcy Court in Case No. 91-10485, *In re George[1] Lionel Moncada*, in the United States Bankruptcy Court for the Southern District of California (San Diego).

---

[1] This prior case is mentioned because of Mr. Shearer's highlighting of the Debtor's actual first name, Jorge, in his response to another show cause motion occasioned by Mr. Shearer's behavior in Case No. 19, *In re Gulfstream*

2.      On July 5, 2019, Mr. Shawn Shearer filed a Motion and Order for Admission *Pro Hac Vice* seeking to appear on behalf of his client Kayo Fortune, LLC ("Kayo Fortune"[2]) [Docket Number 11].   The Order granting Mr. Shearer's appearance *pro hac vice* was later entered on July 9, 2019 [Docket Number 16]

3.      On July 9, 2019, Mrs. Casciato-Northrup resigned as Chapter 7 Trustee for unspecified reasons [Docket Number 14], whereafter the Trustee was appointed.

4.      A total of three[3] meetings of creditors were held in this case: (a) August 7, 2019, which was the original meeting of creditors and lasted for approximately an hour and fifteen minutes; (b) September 4, 2019, which lasted for approximately twenty-eight minutes; and (c) October 16, 2019[4], which lasted for approximately twenty-seven minutes.   Mr. Shearer appeared at, and participated in, each of these meetings after being given the opportunity to ask questions of the Debtor and did not object to the time allotted to do so.

5.      On the Petition Date, based upon the Debtor's testimony at the various creditor meetings, the information contained in the Debtor's schedules and claims filed in this case, the Debtor was the 100% owner of a Wyoming company named Gulfstream Trucking, LLC ("Gulfstream Trucking").   Gulfstream Trucking was a trucking/hauling business formed after the Debtor was approached with an investment potential by Mr. Chuck Dorrity, whom the Debtor testified he knew from college.   The focus of the Gulfstream's business was load-hauling for the oil and gas industry in West Texas.   Capitalization of the business was required to, among other things, purchase tractors and trailers; however, instead of soliciting

---

*Trucking, LLC*.   See Docket Number 44, paragraph 21.

[2] Kayo Fortune is owned by Mr. Marcus Wheaton, an accomplished former professional football player.

[3] The primary cause for the continued meetings was the need for additional information regarding the Debtor's entity Gulfstream Trucking, LLC and to require amendment of schedules due to conflation between the Debtor's personal assets and those of Gulfstream Trucking.   A fourth meeting was reset to November 7, 2019, but was concluded without further testimony.

[4] This meeting was supposed to be held on October 2, 2019; however, it was continued to October 16, 2019.

funds on behalf of, or in the name of, Gulfstream, the Debtor individually obtained loans from individual investors including, but not limited to, a $400,000.00 loan from Kayo Fortune.   Kayo Fortune filed a proof of claim in this case, asserting an approximately $483,000 secured claim, with collateral alleged as "trucking equipment, cabs, trailers."   Attached to these proofs of claim are a promissory note made by the Debtor individually to Kayo Fortune (Gulfstream Trucking is not a party to this note) and b) a series of vehicle titles only one of which indicates that Kayo Fortune is a lienholder.   No other transactional documents, such as a security agreement, are attached or have been provided to the Trustee.   Assuming Gulfstream has liability under the note on some basis, plus the existence of the appropriate security agreement exists, the Trustee believes that Kayo Fortune to be secured as to one vehicle only, not any other assets of the now Gulfstream Trucking bankruptcy estate.

6.     Gulfstream Trucking was no longer in business as the filing of Debtor's the Debtor's Chapter 7 and, if the Debtor's testimony is to be believed, Gulfstream Trucking ceased doing business due to the Debtor's failure to attentively manage the business and through the actions of the Debtor's business partner, Chuck Dorrity.   The Trustee has repeatedly, personally, attempted to contact Mr. Dorrity as to the existence of Gulfstream Trucking's assets to receive only silence in return after speaking to him a single time.   Per the Debtor's testimony and advice in this case, among other things, although he was owner, the Debtor was removed from the day to day operations of Gulfstream Trucking and Mr. Chuck Dorrity was the party who actually ran and operated the company as of the filing of this case.   Moreover, the Debtor testified that he did not know the location of the assets owned by Gulfstream Trucking, be it rolling stock or otherwise, including, but not limited to, the original titles for certificated assets and that such have been subject to the control of Mr. Dorrity.   In short, the Debtor is claiming that his business partner, Mr. Dorrity, took the assets of Gulfstream Trucking for his own purposes.

7.     On October 3, 2019, Mr. Shearer began a written line of inquiry as to the Trustee's position on whether the debt owed to Kayo Fortune was actually the primary obligation of Gulfstream Trucking (despite not being listed as a such in the promissory note) and of which the Debtor was merely a guarantor

(despite being listed as the maker).    At this point, Mr. Shearer began a pattern of behavior that has persisted to date.    Specifically, Mr. Shearer inquired as follows:

> I need to know what Moncada's liability under my client's note is. Is Moncada the borrower or the guarantor? If you are discharging his guarantor interest only my actions will be different than if you are discharging his obligation as primary obligor.

As noted previously, the only documentation received indicated that the Debtor was the sole obligor on the debt owed to Kayo Fortune, with no guarantors. Based on this query, which indicated a conflation (perhaps intentional) between the powers afforded a Trustee and what relief was provided to the Debtor by operation of law, Counsel for the Trustee, in a genuine attempt to be helpful, suggested to Mr. Shearer that the proper course of action was discovery based on FRBP 2004.    Mr. Shearer's response was:

> Marc – I find it wholly improper and unethical for you to be providing me or my client legal advice. You are counsel for the trustee. I am counsel for a creditor. I am in the position to monitor whether the trustee is fulfilling his statutory duties. You are in no position to direct me or my client as to how to monitor the trustee, and monitor you as his counsel, as to your statutory and ethical obligations.
>
> My question is simple.  Where does the trustee believe the primary obligation on my client's note lie? If the primary obligation on the note is with the debtor, then the LLC is not underwater, and as stated in the debtor's disclosures, the LLC has assets of $400,000. Why is the trustee, as owner of that very LLC, not trying to collect those assets?
>
> The trustee's office does not represent the interest of Kayo Fortune, LLC/Markus Wheaton. The idea that you would suggest to me that my clients should use and pay an attorney provided by the trustee's counsel to just go along with the process is an outrage. You simply want my client to pay someone you know. Is this a shakedown? If the bankruptcy bar in Houston is a closed society where those appointed as trustees, and then hire counsel, simply deplete estates of assets for personal gain, while allowing fraud and assets to sneak out the backdoor ignored, then the trustee and/or hired counsel are not doing their job. Gulf Steam Trucking, LLC is wholly owned by the debtor. Why are you not attempting to find the assets missing from the company that you own, Gulf Stream Trucking, LLC?
>
> If serving as Trustee's counsel is not your "bailiwick," I suggest you look at the Handbook for Chapter 7 Trustees. The Trustee does not get to decide the actions of the creditors and for you to suggest otherwise is contrary to this entire process. Your e-mail suggesting that my client find counsel that will cooperate with you, and your client, to simply churn the Chapter 7 system for your personal gain is against everything that the bankruptcy code stands for. This is not a favor trading game with fees to trustees to be split with their friends.  How many times has Mr. Sommers hired you? Hunting a house

*(**continued to the next page**)*

when millions are missing? Out of millions of dollars missing, you are hunting a partial interest in a house. Just enough to cover the trustee's fees and your fees. What about the largest creditor – my client? You have a duty to the creditors of the estate, and my client is the largest of those. Rather than doing your job, your advice is for my client to hire a lawyer that is one of your friends – cross-referrals on the way.

You are acting on behalf of the federal government. The federal government should not be making any suggestions regarding my client's representation.

I know my client is not a bank, so the favors you would normally give to the largest creditor will not be given – the banks need to be a bankruptcy lawyer's friend.

Take a moment and reflect. What is your job as counsel to the US Trustee. Is it personal gain? No, it's not. It is not to divert my client to those who will participate in this process of turning their head to fraud simply to create billable hours to be paid out of funds that are otherwise are payable to creditors of the estate. Counsel for the US Trustee is not supposed to be siphoning creditor funds (already reduced to pennies on the dollar) to bankroll a fanciful chase for a partial interest in a residence in Cypress merely to fulfill hourly billing requirements at counsel's firm.

Please collect the assets of the estate as required by law. If my client's note is the debt of the LLC, so state. If my client's note is the debt of Mr. Moncada, then go collect the assets of Mr. Moncada's, including those assets of the LLC. If the LLC is not part of Mr. Moncada's estate, please so state. No matter who my client's obligor is, I know that grabbing a house to pay your fees and those of Mr. Sommers is not a good use of the estate's funds.

Attached is the adversary complaint filed tonight on behalf of the largest creditor in this matter.

See **Exhibit A**.  Later in the evening, as indicated in the foregoing, Mr. Shearer filed Adv. No. 19-03626, *Kayo Fortune, LLC vs. George Lionel Moncada and Gulfstream Trucking, LLC* (the "Adversary Proceeding") asserting claims for discharge and dischargeability on behalf of his client pursuant 11 U.S.C. § 727(a)(3) (concealment, destruction and/or failure to keep records), §727(a)((4)(A) (false oath); § 523(a)(2)(A) (false pretenses), § 523(a)(4) (fraud while acting in a fiduciary capacity) and § 523(a)(6) (willful and malicious injury).

8.      On November 12, 2019, as set forth in the attached **Exhibit B**, Debtor's counsel sent the following email to the Trustee and his counsel:


(*the remainder of page left intentionally blank*)

Mr. Sommers,

My client passed this information along to me and felt it was information that you all needed it:

**I have an email from my source in Midland that shows where Chuck is now trying to**
**sell the business his daughter deeded 100% ownership to him. I think because the trustee called**
**Chuck , he scared him enough now to where he is caught with an asset that has value and is**
**now trying to get it liquidated. I believe the attorney for Kayo as well as the trustee need to know**
**this is happening so they don't miss out on any legal action they could have taken and missed that**
**opportunity.**

I have not copied Kayo's counsel on this, as I believe that is information for you to decide how to handle first.
Thanks!

9.      After receiving the foregoing, on November 21, 2019, the Trustee filed his Motion for

Authority to Consent Member Interest [Docket Number 43] (the "Motion for Authority") seeking Court

authorization to vote the non-exempt 100% member interest of the Estate in Gulfstream Trucking towards

filing a Chapter 7 bankruptcy for that entity [Docket Number 43], now filed in Case No. 19-36539.   As

stated in that motion, at paragraph 11:

> "Gulfstream is not conducting any business and it appears to [have] assets available to satisfy, at
> least partially, claims of its unsecured creditors.  It assets require marshalling for this purpose.
> Accordingly, the Trustee believes it appropriate for Gulfstream to seek Chapter 7 bankruptcy relief.
> Absent a basis for jurisdiction in federal court, litigation by Gulfstream to recover the Trucks and/or
> claims against Mr. Dorrity would be in state court, likely in Midland, Texas, due to venue and/or
> practical considerations.  Litigation by a chapter 7 trustee of Gulfstream could be brought in
> federal court.  Furthermore, as this Court is well aware, a chapter 7 trustee's power to recover
> property of a chapter 7 estate are broad.   Additionally, recovery, administration of and distribution
> of the proceeds of sale of Gulfstreams' assets to its creditors under the auspices of the Bankruptcy
> Code is in the best interests of Gulfstream's creditors.  . . ."

In short, the Trustee sought authority to put Gulfstream Trucking into a Chapter 7 bankruptcy for the benefit

of the creditor body as a *whole* and avoid the type of "race to the courthouse" the bankruptcy system was

designed to prevent so as to foster the equal distributions of assets to creditors, rather than to favor simply

one.   It is noteworthy that, although the Motion for Authority was filed and granted on an emergency basis,

Kayo Fortune did not undertake any action to seek reconsideration or to appeal of the relief sought, despite

notice of filing of the request for relief and entry of the order approving the same.

10.     After Mr. Shearer's October 3rd correspondence and the filing of the Adversary Proceeding

against the Debtor, Mr. Shearers' communications ranged from professional, when either spoken to directly

or when receiving written communications he perceived beneficial to his client, to a persistent effluent of

odious and perfidious rhetoric with fictitious allegations of racism, concealment of evidence, personal insults, and thinly veiled threats against family members aimed at the Trustee; his counsel, Mr. Marc D. Myers; Mr. Randy W. Williams, the Chapter 7 Trustee later appointed in Case No. 19, *In re Gulfstream Trucking, LLC*; Mr. Williams' counsel, Ms. Annie Catmull, and her co-counsel Ms. Kathleen O'Connor.

## B. Request for Relief

### Ad Hominem Attacks

11.     As noted above, starting with the October 3, 2019 correspondence from Mr. Shearer, a series of ad hominem attacks commenced including, but not limited to: (a) repeated references to a Houston bankruptcy "cabal" and conspiracy see **Exhibits B, C, D** and **G**; (b) personal and ageist based attacks on the Trustee, see **Exhibits D, E, F and G**; (c) baseless accusation of racism, see **Exhibits C, E, F, G, H, I, J, K** and **L**; (d) personal attacks on counsel for the parties, see **Exhibits B, E** and **I**; (e) threats to file civil rights claims against the parties, see **Exhibits I** and **J**; (f) accusations of withholding evidence, blocking, and "tipping off" of the Debtor, see **Exhibits E, H** and **I**; (g) explicit references to the Trustee's wife and attempts to make the Trustee's residence as a child in Indiana an issue of relevance in the case, see **Exhibits F, I, K** and **M**.

12.     There is no cabal or conspiracy converging to act against Kayo Fortune, or Mr. Wheaton, who is a legitimate creditor of this bankruptcy estate.   There is no animus by the Trustee or his counsel against Mr. Wheaton based upon his race, the actions of his counsel or any other reason; again Mr. Wheaton who through Kayo Fortune, is a legitimate creditor of this bankruptcy estate[5].   Moreover, the basis of this motion is not Mr. Wheaton's behavior, but that of his counsel.   There has been no withholding of evidence of any kind by the Trustee who, through counsel, has provided (a) multiple years of bank records for twelve different individual accounts of the Debtor and Gulfstream Trucking; (b) dozens of emails received by the Trustee and counsel from the Debtor's former counsel, Jennifer Casey; (c) the multiple narratives prepared

---

[5] The Trustee does reserve all rights to any claims arising from the 20% interest rate called for in the Kayo Fortune promissory note.

by the Debtor for the Trustee giving his version of events for Gulfstream Trucking's downfall; (d) copies of vehicle titles, notes from various investors, balance sheets and profit and loss statements of Gulfstream Trucking; (e) subpoena responses from third parties; and (f) copies of the audio recordings of all the § 341 meetings all without the necessity of a subpoena.   Moreover, although Mr. Wheaton appears to believe (according to Mr. Shearer) that the filing of the Gulfstream Trucking bankruptcy was designed to frustrate him, this course of action was taken to benefit "all" creditors.   With the exception of any properly secured claim against collateral, Mr. Wheaton's claims are on equal par with other claims of creditors of this estate.

13.     Mr. Shearer's behavior, as evidenced by the correspondence attached as Exhibits to this motion, as well as additional evidence which may be presented to the Court, clearly evidence a wholesale, deliberate and conscious abandonment of his ethical duties required under the Local Rules for the Southern District of Texas, the Texas Rules of Professional Conduct, the Texas Lawyers Creed regarding professional conduct.

14.     Under this Court's inherent authority and 11 U.S.C. § 105, this Court should (i) order Mr. Shearer and Kayo to cease and desist this behavior, and (ii) impose such additional orders as this Court considers appropriate under the circumstances in light of such conduct.   Section 105's plain language grants bankruptcy courts broad remedial authority.   It provides:

> The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provision of this title. No provisions of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process

11 U.S.C. § 105(a) (emphasis added). "[T]he plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code.'". *In Re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009) quoting *Jove Engineering, Inc. v. Internal Revenue Service*, 92 F.3d 1539 (11th Cir.1996).   In addition to § 105, courts have inherent powers in all proceedings, including bankruptcy, to "achieve the orderly and expeditious

disposition of cases." *In re Cano*, citing 92 F.3d at 1553, in turn citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

**Conflation with the U.S. Trustee Office**

15.     Mr. Shearer also appears somehow unable to distinguish between Mr. Sommers' role as a Chapter 7 panel trustee in this case, and the U.S. Trustee as a separate and distinct entity.   Mr. Shearer, for example, always refers to Messrs. Sommers and Williams as U.S. Trustees.   That basic misunderstanding is significant because Mr. Shearer asserts that Mr. Sommers-- due to Sommers' alleged racial biases and those of his counsel-- is simply electing against calling upon the financial resources and criminal investigatory powers of the federal government, which resources and powers, according to Mr. Shearer's view, are at the disposal of Chapter 7 panel trustees.   The charges of racial bias, again, are unfounded in every way.   Further, panel trustees, such as the Trustee in this case, have no special access to a budget, funds, investigators and/or any police power.   Mr. Sommers has no bias against Kayo or against any party related to Kayo, despite all the vitriol from his counsel.   The Trustee's ability to fund investigations are limited to the assets available in a case, which, in this instance is currently limited to approximately $1,500.00 in cash, the Estate's interest in two no-asset, defunct LLCs and its member interest in Gulfstream Trucking.

**Bad Conduct Not Excused by Lack of Admission to the Southern District of Texas**

16.     Mr. Shearer is not licensed in the Southern District of Texas. Mr. Shearer was, however, as stated above, admitted *pro hac vice* in both the Moncada and Gulfstream bankruptcy cases. Mr. Shearer is clearly not complying with the Rules of Conduct found in the Local Rules for the Southern District of Texas, which incorporates the Texas Rules of Professional Conduct. See, Appendix A, Rule 1, A.; Appendix C., N. and Appendix D., C., D., E., F., G., H. and K; see also *In re American Airlines, Inc.*, 972 F.2d 605 (1992) (also applying ABA model rules in a disqualification dispute).

17.     Mr. Shearer's conduct violates the Rule of Discipline of the United States District Courts of the Southern District of Texas.

"Lawyers who practice before this court are required to act as mature and responsible professionals, and the minimum standard of practice shall be the Texas Disciplinary Rules of Professional Conduct."

"Violation of the Texas Disciplinary Rules of Professional Conduct shall be grounds for disciplinary action, but the court is not limited by that code. In re Adoption of Amendment of Rules of Discipline, Appendix A, of the Local Rules of Procedure, General Order No. 2007-8, June 19, 2007."

18.     Rule 4.04 of the Texas Disciplinary Rules of Conduct, on "Respect for Rights of Third Persons" states that "a lawyer shall not use means that have no substantial purpose other than to embarrass … or burden a third person…" Comment 1 to this Rule states "… a lawyer should avoid the infliction of needless harm."

19.     Mr. Shearer's behavior also violates the Texas Lawyers' Creed, adopted on November 7, 1989, by the Texas Supreme Court and the Texas Court of Criminal Appeals.

"A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, <u>courtesy</u>, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. <u>Ill feelings between</u> <u>clients shall not influence a lawyer's conduct</u>, attitude, or <u>demeano</u>r toward opposing counsel. …

I will be courteous, civil, and prompt in oral and written communications.

I can disagree without being disagreeable. I recognize that effective representation <u>does not require antagonistic or obnoxious behavior</u>.

I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. …

I will refrain from excessive and abusive discovery. . ."

20.     Moreover, the Trustee believes communications, as set out in the attached exhibits amount to "antagonistic or obnoxious behavior" prohibited by the Local Rules of the Southern District.

[E]ffective advocacy does not require antagonistic or obnoxious behavior and members of the Bar will adherer to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect.

See Guidelines for Professional Conduct, Appendix D, to the Southern District of Texas Local Rules.   The statements made in the attached exhibits are antagonistic and obnoxious on their face by any reasonable interpretation.

21.     The Trustee asks this Court to schedule a show cause hearing to determine if Mr. Shearer's correspondence and behavior is in violation of the obligations he undertook when granted permission to practice before this Court and, to the extent that the Court agrees that the emails and letters violate Southern District of Texas disciplinary guidelines, that Mr. Shearer be ordered to cease and desist from such behavior and for such other and further relief to which entitlement may be shown and deed necessary by the Court.

22.     As noted above, a similar motion for show cause order was filed in Case No. 19-36539, but for which emergency relief was requested.   In the event that the Court takes up the matters on a joint basis and considers all relief on an expedited or emergency basis, the Trustee advises that his counsel will be in a contested hearing the morning of July 9, 2020 before Judge Isgur in Houston and likely leave town on a pre-paid trip from the afternoon of July 9, 2020 to July 20, 2020.   Moreover, counsel for the Trustee currently has a contested hearing set before Judge Rodriguez in McAllen, Texas, on July 21, 2020, and a likely contested evidentiary hearing before Judge Lopez @ 1:00 p.m. on July 22, 2020, in Houston. According, the Trustee requests that any hearing set be set either on or before July 8th or after July 22nd.

WHEREFORE based on the foregoing the Trustee request all relief sought herein and for such other and further relief to which entitlement may be shown.

Respectfully submitted,

*/s/ Marc Douglas Myers*

_____
Marc Douglas Myers
Ross, Banks, May, Cron & Cavin, P.C.
SBN 00797133
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com
COUNSEL FOR THE TRUSTEE

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2020, a true and correct copy of the foregoing was served on all parties receiving notice via the CM-ECF system.

I hereby certify that on June 29, 2020, a true and correct copy of the foregoing was sent via regular US mail to the Debtor(s), counsel for the Debtor(s), the Trustee, counsel for the Trustee, the US Trustee, all creditors and all persons requesting notice as set forth in the attached unless otherwise served by the CM-ECF system.

*/s/ Marc Douglas Myers*

_____

Marc Douglas Myers

## Marc Myers

| | |
|---|---|
| **From:** | Marc Myers <marcmyers2006@yahoo.com> |
| **Sent:** | Friday, October 04, 2019 5:55 AM |
| **To:** | Marc Myers |
| **Subject:** | Fwd: Moncada  19-33426 |
| **Attachments:** | 34 Complaint.pdf; ATT00001.htm; 34-1 Ex A Promissory Note.pdf; ATT00002.htm; 34-2 Ex B State Court Complaint.pdf; ATT00003.htm |

Marc Douglas Myers, Attorney at Law
(713) 626-1200
mmyers@rossbanks.com

Sent from my iPhone.  Please excuse typographical errors.

Begin forwarded message:

> **From:** "Shawn Shearer" <shawn@shearerlaw.pro>
> **Date:** October 3, 2019 at 11:05:03 PM CDT
> **To:** "'Marc Myers'" <marcmyers2006@yahoo.com>
> **Cc:** "'Ron Sommers'" <rsommers@nathansommers.com>
> **Subject:** RE: Moncada  19-33426
>
> Marc – I find it wholly improper and unethical for you to be providing me or my client legal advice. You are counsel for the trustee. I am counsel for a creditor. I am in the position to monitor whether the trustee is fulfilling his statutory duties. You are in no position to direct me or my client as to how to monitor the trustee, and monitor you as his counsel, as to your statutory and ethical obligations.
>
> My question is simple.  Where does the trustee believe the primary obligation on my client's note lie? If the primary obligation on the note is with the debtor, then the LLC is not underwater, and as stated in the debtor's disclosures, the LLC has assets of $400,000. Why is the trustee, as owner of that very LLC, not trying to collect those assets?
>
> The trustee's office does not represent the interest of Kayo Fortune, LLC/Markus Wheaton. The idea that you would suggest to me that my clients should use and pay an attorney provided by the trustee's counsel to just go along with the process is an outrage. You simply want my client to pay someone you know. Is this a shakedown? If the bankruptcy bar in Houston is a closed society where those appointed as trustees, and then hire counsel, simply deplete estates of assets for personal gain, while allowing fraud and assets to sneak out the backdoor ignored, then the trustee and/or hired counsel are not doing their job. Gulf Steam Trucking, LLC is wholly owned by the debtor. Why are you not attempting to find the assets missing from the company that you own, Gulf Stream Trucking, LLC?
>
> If serving as Trustee's counsel is not your "bailiwick," I suggest you look at the Handbook for Chapter 7 Trustees. The Trustee does not get to decide the actions of the creditors and for you to suggest otherwise is contrary to this entire process. Your e-mail suggesting that my client find counsel that will cooperate with you, and your client, to simply churn the Chapter 7 system for your personal gain is against everything that the bankruptcy code stands for. This is not a favor trading game with fees to trustees to be split with their friends.  How many times has Mr. Sommers hired you? Hunting a house

when millions are missing? Out of millions of dollars missing, you are hunting a partial interest in a house. Just enough to cover the trustee's fees and your fees. What about the largest creditor – my client? You have a duty to the creditors of the estate, and my client is the largest of those. Rather than doing your job, your advice is for my client to hire a lawyer that is one of your friends – cross-referrals on the way.

You are acting on behalf of the federal government. The federal government should not be making any suggestions regarding my client's representation.

I know my client is not a bank, so the favors you would normally give to the largest creditor will not be given – the banks need to be a bankruptcy lawyer's friend.

Take a moment and reflect. What is your job as counsel to the US Trustee. Is it personal gain? No, it's not. It is not to divert my client to those who will participate in this process of turning their head to fraud simply to create billable hours to be paid out of funds that are otherwise are payable to creditors of the estate. Counsel for the US Trustee is not supposed to be siphoning creditor funds (already reduced to pennies on the dollar) to bankroll a fanciful chase for a partial interest in a residence in Cypress merely to fulfill hourly billing requirements at counsel's firm.

Please collect the assets of the estate as required by law. If my client's note is the debt of the LLC, so state. If my client's note is the debt of Mr. Moncada, then go collect the assets of Mr. Moncada's, including those assets of the LLC. If the LLC is not part of Mr. Moncada's estate, please so state. No matter who my client's obligor is, I know that grabbing a house to pay your fees and those of Mr. Sommers is not a good use of the estate's funds.

Attached is the adversary complaint filed tonight on behalf of the largest creditor in this matter.


**Shawn E. Shearer**
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue #155-254
Dallas, TX 75204
(972) 803-4499
www.shearerlaw.pro

**THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**

---

**From:** Marc Myers [mailto:marcmyers2006@yahoo.com]
**Sent:** Thursday, October 03, 2019 5:31 PM
**To:** shawn@shearerlaw.pro
**Cc:** 'Ron Sommers' <rsommers@nathansommers.com>
**Subject:** RE: Moncada 19-33426

Mr. Shearer,

I am the counsel that will be assisting the Trustee in this case and I have a suggestion on how best you can address the issues you have. First a bit a background. I am unaware of how much familiarity you have with bankruptcy cases; however, generally, while the Federal Rules of Evidence and Procedure do apply (mainly) in these case, the bankruptcy code and rules (local and national) can have a big effect that someone who is not a regular practitioner of bankruptcy law would not be aware of. First, while the meetings that have occurred are generally called "creditor meetings," that is a bit of a misnomer. The primary purpose of a creditors meeting is to allow the Trustee to become more familiar with a case to see if there are assets to recover. While creditors are afforded a limited opportunity to ask questions, it is not a chance to thoroughly depose a debtor or debtor rep. That is what FRBP 2004 is for, but more on that later. By this point the Trustee has generally familiarized himself with the Debtor's member interest in the LLC and its potential value, which is effectively zero. The only other issue to address in the rescheduled meeting, by the Trustee, is the Debtor's homestead claim, which I am evaluating. In short, although there will be another creditors meeting, which you are welcome to attend, it will be a short affair.

With regard to the debt owed to your client, with respect, whether that liability is based upon a guarantee or as maker of a note is of no difference to the Trustee and likely not your client (at least from a bankruptcy perspective). In a bankruptcy case a debt is a debt and it is either dischargeable or not. Whether a particular debt should be excepted from discharge under § 523 is a claim that lies solely with the creditor to which that debt is owed, the Trustee is not involved in that as a party of any kind. Your client has all the right in the world to file a § 523 adversary against the Debtor if it meets the requisites of FRBP 9011. Presumably though it wishes to do due diligence to see if that is a wise course of action. While a § 341 meeting might seem an attractive venue to do that due diligence, the better course of action is to use FRBP 2004. FRBP 2004 allows for an examination (deposition) of a debtor, or other person/entity, by a party-in-interest. In short, it is a discovery device that includes depositions and document production. There is case law that describes 2004 discovery as a permissible fishing expedition. You can notice an examination of the Debtor and take all the time you need with him. Further, you can simply record the testimony - after having had an authorized person issue swear the deponent in - and have that recording transcribed at a later date, thereby saving money. All you need do is cooperate with Debtor's counsel in scheduling that examination. That is by far the better way for you to do what you want to do. I have even done 2004 exams via video conference. Note well: **you need to read FRBP 2004 as well as the local rule 2004 and 2004 exams also have to be noticed out to all creditors generally**.

With regard to the LLC, while the estate owns the member interests in the LLC, that is it. It does not own the assets of the LLC, which apparently there are now none. More importantly, there is no standing by the Trustee to pursue assets of the LLC. The Trustee intends to focus his efforts on the Debtor's alleged homestead and not take any further action on the LLC. That said, he would be more than happy to sell your client all right, title and interest of the BK estate in the member interests owned in the LLC for the sum of $5,000, which is sufficient to cover the cost of getting Court approval of such a sale (which is mandated) and provide a minimal recovery for the rest of the unsecured creditors of this BK estate. If your client has any interest in this, please advise and we can proceed forward. If the LLC member interests are not purchased, the Trustee will abandon them back to the Debtor, as they are evidently a burden upon this bankruptcy estate. If you and your client believe ownership of the member interest to be advantageous, I suggest you give this offer serious consideration.

Lastly, if bankruptcy practice is not your bailiwick, it is my suggestion that retention of a bankruptcy lawyer by your client can only help you and it. There are innumerable pitfalls for those who just don't do this all the time. If you like, I would be more than happy to suggest several highly qualified bankruptcy attorneys who would be of great assistance to you. Thank you.

Marc Douglas Myers, Attorney at Law
(713) 626-1200
mmyers@rossbanks.com

Sent from my iPhone.  Please excuse typographical errors.

Begin forwarded message:

> **From:** Shawn Shearer <shawn@shearerlaw.pro>
> **Date:** October 3, 2019 at 4:34:48 PM CDT
> **To:** 'Marc Myers' <mmyers@rossbanks.com>
> **Cc:** 'Ron Sommers' <rsommers@nathansommers.com>
> **Subject: RE: Moncada  19-33426**
>
> I need to know what Moncada's liability under my client's note is. Is Moncada the borrower or the guarantor? If you are discharging his guarantor interest only my actions will be different than if you are discharging his obligation as primary obligor.

---

**From:** Marc Myers [mailto:mmyers@rossbanks.com]
**Sent:** Thursday, October 03, 2019 4:32 PM
**To:** Shawn Shearer <shawn@shearerlaw.pro>
**Cc:** Ron Sommers <rsommers@nathansommers.com>
**Subject:** Re: Moncada 19-33426

Why does this matter?

Marc Douglas Myers, Attorney at Law
(713) 626-1200
mmyers@rossbanks.com

Sent from my iPhone.  Please excuse typographical errors.

On Oct 3, 2019, at 4:18 PM, Shawn Shearer <shawn@shearerlaw.pro> wrote:

> I understand the LLC is not in bankruptcy. I also understand that the debtor was the sole owner and manager of the LLC. I do not think those facts matter to my question.
>
> Are you taking the position that the "borrower" with respect to my client's $400,000 loan was Gulf Stream Trucking, LLC?
>
> **Shawn E. Shearer**
> The Law Office of Shawn Shearer, P.C.
> 3839 McKinney Avenue #155-254
> Dallas, TX 75204
> (972) 803-4499
> www.shearerlaw.pro
>
> **THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF**

**THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**

---

**From:** Ron Sommers [mailto:rsommers@nathansommers.com]
**Sent:** Thursday, October 03, 2019 4:09 PM
**To:** Shawn Shearer <shawn@shearerlaw.pro>
**Cc:** Marc Myers (mmyers@rossbanks.com) <mmyers@rossbanks.com>
**Subject:** RE: Moncada 19-33426

As you are aware the LLC is not a debtor in bankruptcy. The debtor's membership interest is an asset of the estate however it appears that the membership interest does not have value since the LLC has a negative net worth and is not operational. The debtor's counsel has been instructed to have the debtor appear for another creditor meeting on the 16th at 11:00.

---

**From:** Shawn Shearer <shawn@shearerlaw.pro>
**Sent:** Thursday, October 3, 2019 3:49 PM
**To:** Ron Sommers <rsommers@nathansommers.com>
**Subject:** RE: Moncada 19-33426

I do have additional questions for Mr. Moncada.

I apologize that we have not communicated for several weeks, I had a two week trial in Brooklyn the last two weeks of September.

From what I was gathering at the last meeting of creditors, it appears that the Trustee is taking the position that the $400,000 loan from my client, Kayo Fortune, LLC, was a loan to Gulf Stream Trucking, LLC (not the debtor) and the only liability of the debtor within this proceeding is Mr. Moncada's personal guaranty of the loan. Is that the correct description of your position?

What is your position as to the estate's ownership and planned treatment of Mr. Moncada's 100% of the ownership interest in Gulf Stream Trucking, LLC? I understand that the entity as it is now is empty, but the entity did lose track of several trucks and trailers that were owned. I was just curious as to how you viewed the estate's interest in those missing assets.

**Shawn E. Shearer**
The Law Office of Shawn Shearer, P.C.
3839 McKinney Ave. #155-254
Dallas, TX 75204
(972) 803-4499
shawn@shearerlaw.pro

**Marc Myers**

| | |
|---|---|
| **From:** | Shawn Shearer <shawn@shearerlaw.pro> |
| **Sent:** | Friday, January 03, 2020 4:04 PM |
| **To:** | Annie Catmull |
| **Cc:** | Marc Myers; Ron Sommers; rww@bymanlaw.com; kaoconnor@o-w-law.com |
| **Subject:** | Re:   Gulfstream Trucking - 2007 INTL - VIN ending 9634 |

Dear Moncada Bankruptcy Cabal:

I want to be clear on this. We have two trustees and four-plus additional lawyers all of whom have been apprised that Mr. George Moncada - an alleged "debtor" - who has been allowed to reaffirm his home, two vehicles, use his status as his granddaughters guardian to raise money in an opulent black tie event to fund his own legal expenses (and presumably some life insurance benefits from the child's deceased mother) - admitted UNDER OATH that he has no idea where the assets - which he claims to have purchased with my clients money using the company GulfStream Trucking, LLC - are and that Moncada has not known their whereabouts since at least the first quarter of 2019.

That is one calendar year ago. No one, including Mr. Moncada, has even tried to find these assets. Now, you want my client to pay me to help you do your jobs. Then, you want to take a cut of my clients recovered money in fee applications (if there is any money to recover) after all the time Mr. Sommers allowed Mr. Moncada to continue with this fraud by staying my clients actions and doing exactly nothing with the resources of the US Government to aid my client.

No. Do your jobs. Cut Moncada loose you know this is a fraud. You're keeping my client from collecting and he's the only investor. Stop it. You're an embarrassment to this profession.

- Shawn Shearer


On Jan 3, 2020, at 2:59 PM, Annie Catmull <aecatmull@o-w-law.com> wrote:

Hi Shawn. Sorry I was not clear below where I wrote "yes". What I have came from the Tx DMV. I don't remember off hand what the charge was but there was definitely a charge. I don't remember the form # off hand (but will tell you when I get back to the office). Anyway, you can check all that when I send you a link to the docs.

If you have any title docs, please share.

 Thanks.  Annie

Sent from my iPhone


On Jan 3, 2020, at 1:21 PM, Shawn Shearer <shawn@shearerlaw.pro> wrote:

Let me be clear. Do you have the title and registration histories (VTR - 275) of the vehicles that George Moncada represented in his debtors exam were purchased by GulfStream Trucking from the DOT that are available at a cost of approximately $10.05 per search?

According to George Moncadas schedules and representations in his exams my clients money was used to purchase these vehicles. Do you have the information from the State of Texas as outlined above, or not?

I am not interested in any more diversions.

Shawn Shearer

> On Jan 3, 2020, at 1:12 PM, Annie Catmull <aecatmull@o-w-law.com> wrote:
>
> Hi Sean.  After they are digitized I will circulate a link.  But for now, see the attached, which is a cc of the only title history I could find that mentions the Kayo lien.
>
> On Fri, Jan 3, 2020 at 11:27 AM Shawn Shearer <shawn@shearerlaw.pro> wrote:
>> Can you send me copies of the title histories?
>>
>> On Fri, Jan 3, 2020, 12:22 PM Annie Catmull <aecatmull@o-w-law.com> wrote:
>>> Hi Shawn.   Thanks for the email.  Yes on title histories.
>>>
>>> On Fri, Jan 3, 2020 at 11:16 AM Shawn Shearer <shawn@shearerlaw.pro> wrote:
>>>> Annie - Given that George Moncada testified at his very first creditors meeting nearly six months ago that he didn't know where the trucks are, I am not sure why you would think I know where they are. His has been given six months to move assets with nothing done and I was stayed until George's trustee changed his position as to whether or not GS Trucking assets were in his estate - giving George and his co-conipirators time to hide assets.
>>>>
>>>> I don't believe there ever where trucks. But if there were, I have no idea where a 2007 International is.Go ahead and report it stolen. I asked George to do that back in July and he never did. Probably because he knows where it is.
>>>>
>>>> Go ahead and report it stolen.
>>>>
>>>> Have you pulled title and registration histories from DOT?
>>>>
>>>> - Shawn Shearer
>>>>
>>>> Shawn Shearer

The Law Office of Shawn Shearer, P.C.
3839 McKinney Ave. #155-254
Dallas, TX 75204

---

**From:** Annie Catmull <aecatmull@o-w-law.com>
**Sent:** Thursday, January 2, 2020 6:04:25 PM
**To:** Shawn Shearer <shawn@shearerlaw.pro>
**Cc:** Kathleen O'Connor <kaoconnor@o-w-law.com>
**Subject:** Gulfstream Trucking - 2007 INTL - VIN ending 9634

Hi Shawn,

I understand that Kayo Fortune asserts a lien against the above-referenced vehicle.

Does Kayo Fortune know where the vehicle is?

 If Kayo does not know the whereabouts of the vehicle then the trustee will report the vehicle as stolen.

Please advise.

Thanks.


Annie Catmull
O'ConnorWechsler PLLC
www.o-w-law.com
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027
Direct: (281) 814-5977
aecatmull@o-w-law.com



3

--

Annie Catmull
O'ConnorWechsler PLLC
[www.o-w-law.com](http://www.o-w-law.com)
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027
Direct: (281) 814-5977
aecatmull@o-w-law.com



--

Annie Catmull
O'ConnorWechsler PLLC
[www.o-w-law.com](http://www.o-w-law.com)
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027
Direct: (281) 814-5977
aecatmull@o-w-law.com



&lt;Title history on VIN 9634.pdf&gt;

# THE LAW OFFICE OF SHAWN SHEARER, P.C.

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
OFFICE: (972) 803-4499
SHAWN@SHEARERLAW.PRO

December 11, 2019

**VIA E-MAIL & US MAIL**

TO:   **Ronald Sommers, Esq.**    **(rsommers@nathansommers.com)**
      **Marc Myers, Esq.**          **(mmyers@rossbanks.com)**
      **Randy Williams, Esq.**     **(rww@bymanlaw.com)**
      **Annie Catmull, Esq.**      **(aecatmull@o-w-law.com)**
      **Matt Probus, Esq.**        **(mbprobus@w-plaw.com)**
      **Jennifer Casey, Esq.**     **(jennifer@jcaseylawfirm.com)**

**[Yes – this is a letter to SIX lawyers representing a single debtor and the trustee in what was initially disclosed to be a no asset Chapter 7 case.]**

Today I received e-mails from Ms. Catmull and Mr. Probus (attached) advising me of the filing of a Chapter 7 case by Gulfstream Trucking, LLC ("Gulfstream"). Ms. Catmull, counsel to the trustee in the GuIfstream case, advised that the petition was filed on November 25, 2019. From my review of the Pacer docket, the Gulfstream petition was not filed until November 26, 2019.

I have been involved in this process for six-months. Why did I not receive a courtesy notice from anyone as to Gulfstream's filing (mainly why did neither Mr. Sommers nor Mr. Myers, purported owner and counsel for Gulfstream not advise me)? Why was there a rush to file the Gulfstream petition only a day after obtaining authority to do so, and then not informing me – the representative of the largest unsecured creditor in both cases? This is not the conduct reflective of any trustee I have worked with before.

The cloak and dagger cabal game seeking administrative fees is old. It does not take an "experienced" bankruptcy attorney in Houston to see it. The fact that both Mr. Meyers and Mr. Probus have both seen fit to e-mail me, both espousing their greatness in the bankruptcy field and "in" status in the Houston bankruptcy community, just tells, me once again, that this community of lawyers in not performing their statutory functions, but instead gaming the system for personal profit. I know this is the game of the "in the know" bankruptcy bar of Houston. I am not sure that this is how the game is supposed to work. A simple perusal of the public record reveals the repeated enterprise of rotating positions as trustee, counsel to trustee, counsel to a subsidiary, trustee of a subsidiary, etc. Anybody with a brain that has been around bankruptcy at all knows how this ends – my early guess is that Moncada throws in about $250,000 to $400,000

that is divided up among you as administrative fees and this group walks off to do the same thing again.

That is the incorrect, wrong, unjust, lazy, unethical, and improper result.

None of you has worked with me before. None of you knows my experience. I will tell you this about my experience, I have seen frauds before, as have each of you. The question that each of us must ask is how we react to the fraud. Do you expose it and do right? Or, do you game the system to personally profit? Each of us has our own answer to these questions. I know mine. And, I also now know each of yours.

As you know, my client is a former NFL wide receiver with a pristine career and record. This is the first season in his memory that he is not playing football. I am now going to have to explain this nearly inexplicable situation to him before he makes public statements about the process and gives warnings to those now playing or playing in the future as to how society treats these men when they leave the game. He played only a few years, but did well. But, he will never make the same money again. Then, just as he was retiring, a fraudster comes by and takes $400,000 (do any of you know what it takes – after taxes and agent fees, practices and games, to net $400,000 in the NFL – and factor in the impact to the mind and body). And then, to top it off, representatives of the United States Trustee not only allow that to occur, but gather their friends together to feast. This cautionary tale will be told.

Here is what I am trying to understand – I do not believe it is due to my lack of "experience" or not being in the "game" being run in Houston. Simple common sense can see it. Ms. Casey files George Moncada's Chapter 7 when my client attempts to collect – the disclosures are inaccurate and the relationship between Gulfstream Trucking and Moncada confused. Mr. Sommers, trustee of the George Moncada Chapter 7 estate, hires Mr. Myers as his counsel in that case. Significant work is conducted trying to untie a mess created and unexplainable by the debtor. Multiple 341 meetings were held. My ability to ask questions at those meetings was stifled. The debtor could not explain where the assets went – or at least those assets he claims existed went. At the last 341 meeting, Moncada was armed with three lawyers, then there was Sommers and Meyers and me. Then a decision was made to put Gulfstream into a bankruptcy. This has led toWilliams being appointed trustee of that estate. Williams has hired Catmull as his counsel for the Gulfstream estate. And, Mr. Myers has also stepped into the role as counsel for Gulfstream, in addition to his role as counsel to Sommers as trustee of the Moncada estate. Mr. Myers is double-dipping and in a conflict situation.  In addition, Mr. Probus, who has worked with all of you numerous times, has appeared on behalf of Mr. Moncada in the adversary proceeding. So, now we have six lawyers (at least) billing the debtor and the estate. If I have gotten this wrong, let me know.

The bankruptcy vultures of the Houston bankruptcy bar (of which both Mr. Meyers and Mr. Probus have reminded me is an exclusive group) have found a viable carcass to circle, and this ==all designed to create administrative claims to fund a group of white lawyers ahead of my African-American client==. There are now more lawyers running-up administrative costs than there

------------------------------------------------------------
**THE LAW OFFICE OF SHAWN SHEARER, P.C.**
3839 McKinney Avenue, Suite 155-254, Dallas, TX 75204

are material creditors in this case. For what reason? I do not even need to imagine. This group knows that there are funds for this estate and the whites only feeding trough has been opened.

Have any of you "experienced" (to use the language of both Mr. Meyers and Mr. Probus in describing their practice to me) bankruptcy lawyers running-up fees in these cases even bothered to try to locate even one of the major creditors other than my client? I have. The other "creditors" supposedly represent more than $600,000 in claims, and yet not a peep from them. Do they even exist? Do the trucks and trailers even exist? Did Gulfstream ever have a real business? After six-months, has anyone other than me asked these questions or done any investigation? Has anyone examined the Gulfstream bank statements?

Here is the first question for this group of "experienced" bankruptcy attorneys. How can Gulfstream Trucking, LLC, a Wyoming limited liability company, file for Chapter 7 bankruptcy on November 26, 2019 when that same company was dissolved on October 28, 2019? Gulfstream Trucking, LLC did not exist on November 26, 2019. Please see the attached taken from the Wyoming Secretary of State's site.

Did this "experienced" group of bankruptcy lawyers miss the very basic, rudimentary, fundamental, and necessary question of "does the debtor exist?" Is there even a client to represent? It would appear that all of you failed to ask these questions. The drone mentality of a Chapter 7 trustee passing-off no asset case after no-asset case for the minimal fee just to find one gem you can glob onto has blinded you to the fraud that has occurred right under your noses, and now in which you, unwittingly or not, have participated. Did Mr. Sommers even look to see whether the entity existed before signing the petition?

Here are some more questions. Who took the action to dissolve the company while Mr. Moncada's bankruptcy was pending and Mr. Sommers as trustee was holding the equity interest in the LLC? Did anyone notice that Gulfstream Trucking, LLC, a Wyoming limited liability company, never qualified to do business in Texas as a foreign entity yet Moncada testifies at a 341 that it was doing business and earning revenue in Midland? Did anyone wonder how this would impact the entity's ability to defend litigation or whether the taxing authorities would have interest? You are the "experienced" bankruptcy lawyers. Please tell me how to explain this to my client.

My client's position is that there should not be any administrative fees incurred by this group working on the filing of a petition for a non-existent entity. There should not be any administrative fees incurred for us arguing about the filing of a bankruptcy petition by a non-existent entity. There should be no administrative fees for the representatives of a non-existent entity.

Instead of hiring more lawyers to file more bankruptcy proceedings and administrative claims, Mr. Moncada's estate should be trying to collect Mr. Moncada's assets. No effort to do so has been made for the last six months. Instead of seeking assets from June to October 2019, the trustee allowed the entity he owned to be dissolved and the assets (if any) may have dissipated into the ether under his watch. When this case started, notice of an insolvent estate was sent to the creditors. Now, the Gulfstream filing says there are more than $400,000 in assets

Sommers, Myers, Williams, Catmull, Probus
December 11, 2019                                                                                                  Page 4

available, but now four more white lawyers have lined to take them. That $400,000 belongs to my African-American client.

Mr. Moncada, in his disclosures and his statements at the 341 meeting, told the story of his daughter's death. Mr. Moncada's grand-daughter is now his dependent.

No one has to guess how Mr. Moncada is raising funds for his legal fees and the administrative expenses that are attempting to be moved ahead of my client in priority. Mr. Moncada is raising funds through high profile "fund raisers" for the benefit of his now dependent grand-daughter. I have attached the photos of the gala event recently held to raise these funds only days after the Gulfstream entity was dissolved. Please take a look at them. These types of events require up-front fees to be paid. Where are those funds coming from? Has anyone thought about it? It will not go unnoticed by my client that Moncada is leveraging the death of a family member to continue a life of privilege off of my client's physical pain incurred to earn his money that has been converted. This group of lawyers is participating in furthering this damage and allowing this to continue for an additional six-months, with no end in sight.

Does not one of you trustee lawyers in this group even think about how many "investors" actually existed? Do you not think about how a company with no assets in March 2018 could blow through more than an alleged $1.4 million of cash in 6 months and, even after that spectacular loss of cash, have nothing, not even a paperclip? Do you ask how all of the investor funds simply disappeared, the trucks disappeared, the business disappeared, Dorrity disappeared? Do you ask why truck and trailer titles in the name of Gulfstream or George Moncada cannot be produced? Do you not ask whether it raises a red flag that a start-up company with no assets sets up nearly 10 bank accounts and merely moves money back and forth among them, and suddenly, when my client seeks payment that is overdue, the funds disappear - especially given that none of the other "creditors" have appeared? Anyone? Any answers? Any effort? Anything? Or, is this just another annuity for this group? All you are doing is "putting the band back together" to profit from the fraud perpetrated on my client by the Moncadas at the expense of my client.

Here is my view. My client was the only "investor." The other investors do not exist. My client's funds were recycled numerous times in several different ways through a system of approximately 10 bank account (some of which have not been disclosed, but of those undisclosed account, several can be found by a simple review of the available bank statements). There are no trucks. There are no trailers. There was no business. "Blowers" were not purchased and installed. My guess is that there are no real obligors on the "blower notes." The Nelson Family, LLC (Tim Nelson), a creditor in this case, is not the Nelson Family in the trucking business in North Dakota (Gary Nelson) - take a look at the proof of claim filed. This is an outright heist.

I do not understand why the United States Trustee, represented by each of you, is not looking at this situation with any interest. Is it too upsetting that an African-American should have his funds returned?

This is an embarrassment to the legal practice in the State of Texas. The trustee has not aided in the collection of assets, and has not worked with me in the recovery of my client's

_____
**THE LAW OFFICE OF SHAWN SHEARER, P.C.**
3839 McKinney Avenue, Suite 155-254, Dallas, TX 75204

wrongfully taken $400,000+. Instead, the trustee has served as an obstacle and lined-up another four lawyers to siphon-off anything that can be found or thrown into the pot as a gesture among this band of cohorts. All of this over a company that does not exist, but the money has disappeared. What are you doing? There are major conflicts amongst this group. There are claims by each of your clients against the other. The thing is that the end result is supposed to be for the benefit of my client, the largest creditor in this case.

This is simply a game of keep-away for profit. It is truly disgusting that a hard-working 28 year-old African American man who has raised himself up and followed the system as presented to him, is not afford the protection or assistance of representatives of the United States Trustee. Instead of assisting in exposing the fraud, this group of representatives is spending hours trying to profit from my client's loss at the hands of Mr. Moncada. I ask you to do your jobs.

From what I can tell, Mr. Sommers filed the Gulfstream bankruptcy under the penalty of perjury for a company that does not now exist. Rather than seeking fees from this band's latest gig, maybe it is time to start looking at the debtor's representations made to us all, including my client. They are not accurate, and knowingly so.

It is time to let this case go. Sommers, Myers, Williams, join in support of the adversary. No discharge for Moncada. As alleged in my clients litigation filed against Mr. Moncada and others, this is a fraud.  The trustee and trustee's counsel should not be profiting from the fraud, but rather should be protecting the process and the victims of the fraud. I do not see the protection of the creditors or the process occurring in this case.

My client has done everything right to secure a future for his family, for the first, and possibly only time, at the expense of his body. He avoided all the pitfalls that were around him from South Phoenix, to college and then the NFL. His career was cut short. Now, when he looks for help from the United States government (and its representatives Sommers, Meyers, Williams, and Catmull), the answer is that this band of private lawyers is going to take it from him. I hope you prove me wrong.

Here is what I know. If there is enough money around to attract and fund this group, there should have been enough money to repay my client what had been taken from him if there had been any effort to question Moncada and collect the assets or expose the scheme. Is anyone paying attention while this goes on under your noses or is it being allowed to occur?

Once again, I am going to ask this "esteemed" group, how do I explain this to my client? Examine your conscientious (if you have one) and let me know.

Very truly yours,

THE LAW OFFICE OF SHAWN SHEARER, P.C.
3839 McKinney Avenue, Suite 155-254, Dallas, TX 75204

**Shawn Shearer**

---

| | |
|---|---|
| **From:** | Annie Catmull <aecatmull@o-w-law.com> |
| **Sent:** | Wednesday, December 11, 2019 11:41 AM |
| **To:** | shawn@shearerlaw.pro |
| **Cc:** | Randy W. Williams; Kathleen O'Connor; Matthew Probus; Marc Myers |
| **Subject:** | Kayo v Gulfstream |

Shawn,

Gulfstream is in bankruptcy as of 11/25/19.  The case no. is 19-36569.   Randy Williams is the trustee.   My  law firm (including Kathleen O'Connor, who is copied here) is proposed counsel for Randy Williams.

I read your motion for default judgment in adv 19-03626 to seek entry of judgment against Gulfstream.  That violates the automatic stay found in 11 USC 362(a) and is thus contempt.

Please let me know if I misread your motion.

Thanks.

Annie Catmull
O'ConnorWechsler PLLC
www.o-w-law.com
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027
Direct: (281) 814-5977
aecatmull@o-w-law.com



1

## Shawn Shearer

| | |
|---|---|
| **From:** | Matthew Probus <mbprobus@w-plaw.com> |
| **Sent:** | Wednesday, December 11, 2019 10:35 AM |
| **To:** | Shawn Shearer |
| **Cc:** | 'rww@bymanlaw.com'; Marc Myers; rsommers@nathansommers.com; Annie Catmull |
| **Subject:** | RE: Kayo Fortune v. Moncada & Gulf Stream Trucking |
| **Attachments:** | Signed Order Authorizing Trustee to execute Consent to file Gulfstream case.pdf; Creditors Matrix.pdf; SOFA.pdf; Schedules A - H.pdf; Petition.pdf; Motion to Execute Consent to file bankruptcy.pdf |

Shawn:

I was called by Randy.  He was seeking litigation counsel for Gulfstream to chase down the trucks from Dorrity.  Not sure how you missed it.  Sitting right out there on PACER.  To help you out a bit, attached is the Trustee's motion for authority to execute the written consent of Gulfstream, the order granting that motion, and the petition/schedules/SOFA in Gulfstream's case.  So needless to say, I did not receive bad information.  Not to blow my horn, but just to make sure you know, I have been practicing bankruptcy in Houston for 30 years.  I do not act on suspect information.  I would advise you to stop attacking my client's character, do your own homework a bit better, and avoid violating the automatic stay.

With respect to my "inside track," you do not need any inside track.  Just the docket sheet.  I have copied Randy on this email so that you can easily get with him directly. I have also copied his special counsel Annie Catmull and Mr. Moncada's trustee Ron Sommers and his counsel Marc Myers.

Best of luck Shawn,

Matt

**Matthew B. Probus**
Wauson | Probus
One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 (Office)
(832) 452-0379 (Cell)
(281) 242-0306 (Facsimile)

---

**From:** Shawn Shearer <shawn@shearerlaw.pro>
**Sent:** Wednesday, December 11, 2019 10:01 AM
**To:** Matthew Probus <mbprobus@w-plaw.com>
**Subject:** Kayo Fortune v. Moncada & Gulf Stream Trucking

Matt – I received your voice mail last Friday (12/6) in which you advised me that Gulf Stream Trucking had filed a bankruptcy proceeding and that Randy Williams had been appointed trustee. I am not sure where you got this information, but it is incorrect. I did a Pacer search before filing the Default and I just did another Pacer search for Gulf Stream Trucking. The only proceeding that comes up is the adversary proceeding in which you represent Moncada.

I have a few questions for you. Who gave you the information that Gulf Stream Trucking had filed bankruptcy? You seem to have received bad information. Whoever did give that information to you was either deceiving you or their plan to have you extend an answer two weeks was necessary for them to get the bankruptcy filing package done.

Also, how could you possibly know the trustee appointed in a un-filed bankruptcy case? If it came from Moncada, you now know his proclivity for deception, misinformation, and outright lying (which I can prove at this point).

If your inside track grapevine lets you know who will be representing Gulf Stream Trucking, please let me know so I can make contact with them.

**Shawn E. Shearer**
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue #155-254
Dallas, TX 75204
(972) 803-4499
www.shearerlaw.pro

**THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**



**Wyoming Secretary of State**
Herschler Building East, Suite 101
122 W 25th Street
Cheyenne, WY 82002-0020
Ph. 307.777.7311
Email: Business@wyo.gov

**WY Secretary of State**
**FILED: 10/28/2019 04:01 PM**
**Original ID: 2018-000793193**
**Amendment ID: 2019-002678150**

# Limited Liability Company
# Articles of Dissolution

1. The name of the limited liability company is:

GULFSTREAM TRUCKING LLC

2. Certification. *(Please check the box to complete the required certification.)*

☑  I hereby certify that I am in compliance with W.S. 17-29-701, and I have met all requirements for dissolution and winding up as required in the Limited Liability Company Act. I further certify that I have the authority to complete the dissolution of this business entity. The limited liability company is now dissolved.

Signature: _____

*(Shall be executed by a person authorized by the company.)*

Date: 10/17/2019
*(mm/dd/yyyy)*

Print Name: Philip Herr

Title: AGENT

Contact Person: Philip Herr

Daytime Phone Number: 8009441120

Email: newcorporation@aol.com

*(Email provided will receive filing evidence)*
*May list multiple email addresses*

Checklist
- ☑ **Filing Fee: $50.00** Make check or money order payable to Wyoming Secretary of State.
- ☑ Please submit one **originally signed** document.
- ☑ The business entity is **active and in good standing** with this office.
- ☑ **Typical processing time is 3-5 business days** following the date of receipt in our office.
- ☑ Please review form prior to submitting to the Secretary of State to ensure all areas have been completed to avoid a delay in the processing of your documents.

*Received OCT 21 2019 Secretary of State Wyoming*

LLC-ArticlesDissolution - Revised August 2019

# RECEIPT



**Secretary of State**
Herschler Bldg East, Ste.100 & 101
Cheyenne, WY 82002-0020

AABS INC.
1817 MORENA BLVD, STE A
SAN DIEGO, CA  92110

## RECEIPT INFORMATION

Receipt #:       **001746114**
Receipt Date:    **10/28/2019**
Processed By:    **Karlie Walter**

> ## DO NOT PAY!
> ## This is not a bill.

| Description of Charges | Reference | Quantity | Unit Price | Total |
|---|---|---|---|---|
| Dissolution - Limited Liability Company - Domestic | 2019-002678150 | 1 | $50.00 | $50.00 |
| | **TOTAL CHARGES PAID** | | | **$50.00** |

| Description of Payment | Reference | Amount |
|---|---|---|
| Payment-PAD Account | 00673 | $50.00 |
| | **TOTAL PAYMENT** | **$50.00** |

| PAD Account:  **00673 - AABS INC.** | PAD Begin Balance: | **$220.00** |
|---|---|---|
| | PAD End Balance: | **$170.00** |

**In Reference To:**
GULFSTREAM TRUCKING LLC (2018-000793193); Amendment ID: 2019-002678150

PAD or Billing Questions?
(307) 777-5343
SOSAdminServices@wyo.gov

Page 1 of 1





by Terry Moncada of Moncada
Marketing & Amey Hoey of Aimstar
Events

Follow

$190 – $250

Sales Ended                    Details

## Description

Terry, Owen Messac & Aimstar Events invites you to:

### A NIGHT in MONTE CARLO FUNDRAISER

*High Roller Ticket - includes One Male & Two Female Guests*

Saturday, November 2nd, 2019 5:30 pm - 10:30 pm at The Messac Mansion - La Jolla

PLEASE JOIN US FOR A FABULOUS CASINO THEMED FUNDRAISING EVENT

All ticket prices include: Hosted Bars, Heavy Hors d'oeuvres, 8ft Charcuterie Table, DJ, Dancing & Entertainment, Photobooth.

Casino Gaming Tables (Black Jack, Roulette & Craps), Funny Money, Cash Prizes and Raffles.

5:30pm – 6:30pm – Registration & Sunset Cocktails on the Ocean-View Martini Deck

6:30pm – Hosted Bars & Heavy Hors d'oeuvres begin

7pm - 9:30pm – Casino Gaming

9:45pm – Cash Prizes & Raffle Drawings

9:30am - 10:30pm - DJ & Dancing

Attire: Black Tie Optional (Dress to Impress)

Parking: No Street Parking - Ubers/Lyfts/Taxis are Mandatory

All funds raised will go towards the MONCADA FOUNDATION benefitting Sydney Moncada.

Please purchase your ticket(s) soon, as we expect to be SOLD OUT in the next few weeks.

We hope you can make it!

Cheers,

Terry Moncada of Moncada Marketing

Owen Messac of Swagg Seats Inc

Amey Hoey of Aimstar Events -

## Tags

### Date And Time

Sat, November 2, 2019
5:30 PM - 10:30 PM PDT
Add to Calendar

### Location

Messac Mansion
1718 Valdes Dr
La Jolla, CA 92037
View Map

### Refund Policy

Refunds up to **30 days** before event
Eventbrite's fee is nonrefundable.





**Marc Myers**

| | |
|---|---|
| **From:** | Shawn Shearer <shawn@shearerlaw.pro> |
| **Sent:** | Wednesday, January 29, 2020 10:25 AM |
| **To:** | Annie Catmull |
| **Cc:** | kaoconnor@o-w-law.com; Marc Myers |
| **Subject:** | Re:  In Re Gulfstream Trucking, LLC - 01/29/20 Section 341 Meeting - Request to Reconvene |

Ms. Catmull:

Thank you for your written answer. Of course there will be more than one Rule 2004 exam, and you are well aware of that. I mean, what was the point of Sommers rushing to jam GulfStream Trucking LLC into bankruptcy with his hand written, backdated, chicken scratchings if he has "no knowledge" of Gulfstream Trucking, LLC's information? To add you and Mr. Williams as part of the all white panel that the Houston bankruptcy bar has set to lynch my client instead of fulfilling its duty to aid him?

Of course now that you have made your position firm, it goes without saying that Sommers, Myers, Williams nor your firm can collect any fees for bills since I did all the research and work - paid for by Kayo Fortune. The trustees office has made it a point to ensure that Kayo Fortune come out of pocket as much as possible in order to recover even one cent of it's money from this enterprise.

To this point, all that has happened is a back door deal that cut off my clients remedies for contempt and secured payment ostensibly for Sommers and Myers - who you admit, have no knowledge and actually have no claim to fees, My client and I are now "crystal clear" on where you and Mr. Williams stand with regards to any obligations you hold to creditors of Moncada and his wholly owned LLC, GulfStream.

Also, the exclusion of all other parties from this proceeding will serve to demonstrate Mr. Williams belief that Moncada is the only party who can serve as a "legitimate" business person on behalf of GulfStream Trucking, and that is so noted.

I love that you wrote that think I'm going to fly to Houston from Dallas because that further demonstrates your entitled elitist mentality and habit of over billing. I drive, Ms. Catmull. My client is not a cash register, and that will become all too clear to you and your colleagues soon enough.

I'm beginning to understand why Terry Moncada told my client that George Moncada filed Chapter Seven because they were told that Mr. Sommers would "work with" Chuck Dorrity and that relationship would help George.

See you later today.


- Shawn Shearer

**Shawn E. Shearer**
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue #155-254

Dallas, TX 75204
(214) 272-9533
www.shearerlaw.pro

**THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**

On Jan 29, 2020, at 9:42 AM, Annie Catmull <aecatmull@o-w-law.com> wrote:

Shawn - The trustee made it crystal clear that the point of the follow up 341 meeting was to clear up  outstanding schedules/SOFA issues with Moncada (a Gulfstream business person), not with Sommers.  I don't even know if Sommers is going to be there.   If you want to spend your client's money flying down to ask Sommers--- a witness with no personal knowledge about the Gulfstream business--- questions under oath, then set a Rule 2004 examination of Sommers so you can ask (the pointless) questions and take all the time you want (assuming Sommers does not object).

On Wed, Jan 29, 2020 at 8:39 AM Shawn Shearer <shawn@shearerlaw.pro> wrote:

Annie – Neither my client who was in attendance nor I recall Mr. Sommers being released. I do not know how he could be released from a 341 when he was the one who completed the petition, schedules, and SOFA and all of his answers were "unknown." From my understanding, Mr. Moncada is no longer a representative of Gulfstream Trucking. I am not sure how his appearance at a 341 does anything to provide information for the only creditor that has ever attended a single one of these meetings, and that creditor is unable to ask questions of Mr. Moncada.

The exclusion of Kayo Fortune from the process in both the Moncada and Gulfstream Trucking cases is a problem that will be raised if it continues.  Kayo Fortune wanted to be heard on the contempt motion on the liquidation of Gulfstream Trucking, but an "agreed" order was entered without any communication with Kayo. You must remember, it was Kayo Fortune who first raised the dissolution issue and for good reasons related to the adversary proceeding in Moncada. Kayo Fortune was more than just an interested party in the treatment of the violations of the stay, but was never even contacted for its input or thoughts on the motion. The exclusion from that conversation and the presentation of an "agreed order" was untrue – Kayo Fortune did not agree. Kayo Fortune was deprived the opportunity to speak on the issue and have evidence presented on the record. In particular, George Moncada skirted providing on the record testimony. Then, the remedy was for payment to be made to Mr. Sommers and Mr. Myers, when I did all of the work and was deprived of the opportunity to either bring the contempt motion myself and agree to an order. Simply the trustee grabbing money.

At the first Gulfstream, before creditors were offered the opportunity to ask questions, Mr. Williams announced that the meeting was going to be continued. Mr. Williams then ndicated that due to the adversary and Mr. Moncada's unrepresented status, that I could not ask him questions. Again, Mr. Moncada skirted answering questions under oath. Given the continuance of the meeting, the time the meeting had taken, and the ability to ask Mr. Sommers questions today, I did not object to those limitations imposed by Mr. Williams.

The same pattern has occurred in the 341's in the G. Moncada Chapter 7. Mr. Moncada avoids questions and is given the opportunity to provide documents to the trustee and then the meeting is adjourned without the creditors ever being able to ask questions of Mr. Moncada about the new information.

Further, you have directed that I am unable to talk to Mr. Williams. My only outlet in this case is you and your response to my demand for Mr. Sommer's presence is that you "believe" Mr. Sommers was excused? That is the trustee's response to a creditor asking to question the debtor's only representative at a continued 341? Either Mr. Williams did excuse Mr. Sommers or he didn't. I "believe" he was excused is not an answer. I have no evidence or recollections from two people in the room that he was "excused", whatever "excused" means.

It appears to me that the system is backwards. These meetings are not to protect the debtor and exclude the creditors. It is the other way around. The lack of cooperation with the creditors, the lack of providing opportunity to the creditors, and the behind the scenes agreements without including the creditors needs to stop. I am being systematically deprived by the appointed trustees in both cases of the opportunity to question the debtor's at 341 meetings. You were not there, but at two of the meetings in the Moncada case, in which I began asking questions, I was tamped down and stifled by Mr. Sommers. Simply saying ask for a 2004 is not sufficient. The 341 involves more than simply the trustee taking the time, throwing everyone out of the room, and collecting his fee.

I have never seen a bankruptcy process (especially one where allegations of fraud percolated to the top immediately) exclude creditors and protect the debtor.

There is only one petition filed in this case and Kayo is entitled to ask the debtor's signatory questions about the petition and its process. The person that completed the petition was Mr. Sommers. The lack of questions to Mr. Sommers by Mr. Williams or the creditors is insufficient for purposes of Section 341. Kayo Fortune is once again asking the trustee to assure that Mr. Sommers is at today's 341 meeting for the entity he placed into Chapter 7.

**Shawn E. Shearer**

The Law Office of Shawn Shearer, P.C.

3839 McKinney Avenue #155-254

Dallas, TX 75204

(214) 272-9533

www.shearerlaw.pro

**THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**

**From:** Annie Catmull [mailto:aecatmull@o-w-law.com]
**Sent:** Tuesday, January 28, 2020 6:47 PM
**To:** Shawn Shearer <shawn@shearerlaw.pro>
**Cc:** Kathleen O'Connor <kaoconnor@o-w-law.com>
**Subject:** Re: In Re Gulfstream Trucking, LLC - 01/29/20 Section 341 Meeting - Request to Reconvene

Shawn - I believe the trustee excused Ron Sommers.  If it goes forward tomorrow it will not be Sommers. If you want testimony from Sommers you should set a Rule 2004 examination of Sommers.  But you may save your client some money if you just email or call Marc Myers. I have always found Ron and Marc to be straight shooters.

Sent from my iPhone

On Jan 27, 2020, at 10:02 PM, Shawn Shearer <shawn@shearerlaw.pro> wrote:

Annie – I have not heard back from you. I am going to be in Houston on Wednesday and will be attending the Section 341 for Gulfstream Trucking at 3:00 pm. I have some questions for Mr. Sommers regarding his preparation of the petition, schedules, and SOFA. As the largest creditor in this case, I am entitled to that opportunity.

**Shawn E. Shearer**

The Law Office of Shawn Shearer, P.C.

3839 McKinney Avenue #155-254

Dallas, TX 75204

(214) 272-9533

www.shearerlaw.pro

**THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**

---

**From:** Shawn Shearer [mailto:shawn@shearerlaw.pro]
**Sent:** Wednesday, January 22, 2020 4:00 PM
**To:** 'Annie Catmull' <aecatmull@o-w-law.com>
**Cc:** 'Kathleen O'Connor' <kaoconnor@o-w-law.com>
**Subject:** In Re Gulfstream Trucking, LLC - 01/29/20 Section 341 Meeting - Request to Reconvene

Annie – I am requesting that the scheduled Section 341 Meeting in Gulfstream Trucking, LLC proceed as scheduled. Even if Mr. Moncada performs as was demanded of him in the meeting continued on January 15, 2020. Creditor Kayo Forunte, LLC has questions for Mr. Sommers as the party that signed the initial petition, schedules and SOFA regarding his preparation of that filing and the

current authority of Mr. Sommers and Mr. Moncada to act on behalf of the LLC. I do not believe that Moncada providing information to amend that filing will answer my questions.

Consider this Kayo Fortune, LLC's request of Trustee Williams to reconvene the Section 341 meeting in In Re Gulfstream Trucking as scheduled on January 29, 2020 at 3:00 p.m. with Mr. Sommers available to answer Kayo Fortune's questions regarding the preparation of the initial filing documents in this case.

**Shawn E. Shearer**

The Law Office of Shawn Shearer, P.C.

3839 McKinney Avenue #155-254

Dallas, TX 75204

(214) 272-9533

www.shearerlaw.pro

**THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**

--

Annie Catmull
O'ConnorWechsler PLLC
www.o-w-law.com
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027
Direct: (281) 814-5977
aecatmull@o-w-law.com

# THE LAW OFFICE OF SHAWN SHEARER

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
shawn@shearerlaw.pro

June 15, 2020

## VIA ELECTRONIC MAIL AND CERTIFIED MAIL

Mr. Marc Meyers
3120 Southwest Freeway #320
Houston, Texas 77098

Marc:

Please advise on what actions have been taken regarding Mr. Jorge Leonel Moncada and his attempt to obscure his storage unit(s) from the Trustee. I am certain that you have now checked Moncada's schedules wherein he swears that he has no storage unit and no sports equipment - both are now deemed lies by Moncada's own written response to you of June, 2020.

I am not sure how much more money you and Trustee Sommers expect my client to spend on this before you throw Moncada out on a 707 but I will assure you, every day that goes by this situation gets worse for Jorge Leonel Moncada, Charles David Dorrity and anyone who may be aiding them. The refusal of Trustee Williams' Counsel to meet my client in person, file an insurance claim or search for assets is inexplicable, and will not end well for either of them despite my many urgings that they perform their duties.

I have also found through discovery, an e-mail from Jennifer Casey (attached) to you and Trustee Sommers dated November 12, 2019 wherein Jorge advises you that Chuck Dorrity is attempting to sell the business that Moncada believes has absconded with the *GulfStream Trucking, LLC* assets. Even though Kayo Fortune is mentioned in this e-mail expressly by Mr. Moncada the email was never forwarded to me and I was not given timely information upon which to act.

You and Trustee Sommers intentionally kept this information away from me and my client.

Rather than doing what you are **legally required to do**, and taking action to prevent Dorrity from stealing and selling the assets you:

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

1. Bought time with a non-descript, vague e-mail requesting "more information regarding the source" - yet cryptically do not ever name that source or follow through on any of the information Casey provides you.

2. Nine days later, on November 21st, filed an EXPEDITED MOTION to allow Trustee Sommers to both
   a. vote the *GulfStream Trucking, LLC* membership interests and
   b. put *GulfStream Trucking, LLC* into a Chapter 7

3. Forced my client to withdraw his Notice of Default Judgement against *GulfStream Trucking, LLC* - despite the fact that Moncada himself had violated the stay order and should already be thrown out of this process on that basis alone

It must have been a bitter pill for Ms. Casey, Moncada's Chapter 7 attorney, to take her turn in line and choke down the blame in this farce when she appears to be the one lawyer who acted with integrity. This November 12 email demonstrates that neither you nor Trustee Sommers gave my client a second thought when you attempted to create a scenario that will allow my client's assets to vanish without explanation.

I am going to tell you again, Marc. That simply is NOT going to happen. I am a Civil Rights lawyer and I have a federal practice in Constitutional law. I also know how to do a bankruptcy. But the civil rights violations here are clear. I did not enter into this bankruptcy anticipating that it would become a matter requiring the invoking of my client's right to be treated equally. But you have allowed this to devolve into a Jim Crowe level nightmare. And not one of you will have immunity from the reach of the Constitution or it's amendments.

The Chapter 7 filing for *GulfStream Trucking, LLC* was completed on **November 26, 2019** - a full two weeks after you and Trustee Sommers learned the location of the assets - directly **from Jorge Moncada and his attorney.** This information was not ambiguous. You have both known since at least November 12, 2019, where assets of *GulfStream Trucking, LLC* are stated by Mr. Moncada to be located, and you both allowed such assets to be sold, stolen, or otherwise compromised **while simultaneously violating my client's civil rights and refusing him any ability to recover assets. If you do not believe Mr. Moncada - then you must utilize a 707 and throw him out of this process immediately.**

On November 26, 2019, Trustee Ronald J. Sommers, upon learning that my client had beat him to the punch and filed a petition against Dorrity based on the results of Jorge Moncada's first two 341 meetings, (yes, that's right - **first two** 341 meetings for a "no asset" Chapter 7) hastily scribbled a petition in something resembling a pre-schoolers broken crayon. Sommers likely found at least one crayon left behind by the dozens of minor children who inexplicably wander of the streets of Marfa, only to then disappear into the night. No doubt Trustee Sommers was trying to enjoy a leisurely Thanksgiving dinner with his wife in that very city when someone who owes him a favor from the Western District of Texas alerted Sommers that his filing - aimed to protect the father-in-law of JR Christy whose mother hails from Sommer's native Terry Haute, Indiana - was going to be one day late.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

Despite Sommer's best efforts, the date of November 25, 2019 being awkwardly hand written on the petition did not change the reality that the Trustee's petition could not be filed until November 26, 2019. Therefore Kayo Fortune, LLC's petition had the first shot at Mr. Dorrity, and it is **quite clear** upon reading this attached November 12 email, and seeing what has been done by you and all other lawyers involved in this charade, that Dorrity is to be protected at all costs. In fact, Trustee Sommers was so singularly focused on protecting Mr. Dorrity, that Sommer's neglected to notice that the entity of *GulfStream Trucking, LLC* had been dissolved in Wyoming at Mr. Moncada's instruction merely one day after Moncada's second 341 hearing, thusly calling into question both the November 21, 2019 decision to request an expedited motion and the November 26, 2019 move into Chapter 7.

Mr. Randy West Williams (not coincidentally, now working at a small Houston firm in tandem with his wife who he met while in school in - you guessed it - **INDIANA**) the U.S. Trustee for *GulfStream Trucking, LLC* has taken no action against Mr. Dorrity over the last seven months. To any outside observer, it appears that Mr. Dorrity has been being protected for the past 12 months by the United States Trustee's Office and its representatives and counsel.

I truly hope that is not the case. But at this point, my client feels entirely disenfranchised. I am going to ask you one more time - when is Trustee Sommers going to make use of his available 707 to toss Moncada for his lies? If I do not receive an answer by **Friday, June 19, 2020** you are leaving me no choice but to ask that at least Sommers and likely Williams both recuse themselves from this matter.

This is a long game. Marc. I promise you. I understand that the community of bankruptcy lawyers in every city is a tightly knit group. I understand the need for efficiency. But I will not accept the disparate treatment that my client is currently receiving. That you throw Mr. Probus a bone on occasion due to the fact that he has an African American spouse is not enough to demonstrate that you are treating my client in any way that is fair or legal.

Ms. O'Connor's hand in this - from the ridiculous sudden 8 am appearance of her former firm claiming to represent AIM Bank at the eleventh hour in order to avoid AIM having to admit the existence of TNM Oilfield Service's existing bank accounts and thefts, to Probus' transparent cries for help and sanction to Judge Jones even though Moncada lied more than twenty times in his schedules about even the most basic truths - is both transparent and will ultimately be ineffective. I understand that Kathleen is used to being able to throw the weight of more than one of her brother's around, but I really do not believe that any sitting judge is in favor of what is happening to my client in this situation, and no logistics provider worth his salt continues to fight a lost cause merely out of stubbornness.

Quite frankly, Marc, you all have allowed this to drag on to the point that I now understand exactly how this operation is working and why it is in place. I understand protectionism, I understand a lot of things about business. But I do not understand, nor do I accept, a group of white, southern lawyers aiding a third generation Plainview farmer in pursuit of any kind of overarching goal, at the expense of my client and his civil rights.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

Mr. Jorge Moncada does not have representation at present in the Chapter 7. You have an **obligation** to inform him of his responsibility to turn over whatever is or was in that storage unit, although surely it has been emptied by this time due to your casual language and inexplicable choice to tip off a known liar about this matter. He has said on his schedules that he has no sports equipment. Whatever is or was in that unit, is owned by Mr. Sommers at present, and has been paid by Moncada for at least 55 consecutive months without interruption, added fees, rollover, auction or any other demonstrable delinquency. Moncada has allowed **every other financial obligation** in his life to become delinquent at one point or another except for the contents of his Solana Beach storage unit. Once you became aware that he lied to you about its existence, you had an **obligation** to creditors to preserve all video footage, all records of entry and exit and demand that Moncada be denied his discharge.

The man has lied about his legal name. I had to use **seven requests for admission** to find out the truth about what his actual name is. Trustee Sommers and Trustee Williams both looked at Moncada's drivers license, and they both knew that Moncada lied about his name. Neither acted on that knowledge. Whatever reason you had when this debacle began that you believed justified allowing my client to receive this kind of discriminatory treatment at the hands of the U.S. Trustee is no longer viable. There is really no salvaging this in the long run. The longer you let this drag out, the more information becomes available about your actions.

Simply put, had you believed Jorge Moncada, someone from the Trustee's Office would have followed up on the things he told you about the location of the trucks he claims were purchased with my client's money.  No one has. So either you are purposely allowing the assets to be stolen because you do not want to see the only creditor to have made an in person appearance or attempt to find assets - an African American male - recover his money - or you disbelieve Mr. Moncada and you toss him.

Time is running short for this part of the process. My client is extremely disappointed in the treatment he has received, and, as you know, is planning on making a trip to Texas to search for the assets that he has been told by counsel to Mr. Williams and others are in Texas, but that Williams will not attempt to locate. Ms. Catmull's treatment of Mr. Wheaton is despicable. Mr. Wheaton is also planning on meeting with various members of the National Football League in the wake of the horrific murder of George Floyd to discuss what official statements of players - past and present - will be given Commissioner Goodell's tardy but appropriate decision to side with his workforce on the matter of "taking a knee."

My client is preparing his forum. My client has a forum. So, Marc, I am telling you one last time. You need to let me know why Trustee Sommers has not sought to dismiss Moncada on the basis of a 707. Or better yet, let me know that he is going to do so, and when. I asked you if you have even **one** other bankruptcy proceeding at present that is over a million dollars as Moncada claims where the largest and only creditor to appear in person is an African American male who is owed more than $400,000.00(USD) and you have not answered me.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

The attached email is very disappointing, but it is reality. You have a short time to do what you know is right remedy the wrong you and Trustee Sommers have done to my client. To allow your poor decisions to either fester or snowball is not going to cause my client to disappear, rather it just creates needless expense and is not the intended use of the court system. Please do your job.

Very truly yours,

Enclosed - Email from Jennifer Casey 11-12-19

cc: Markus Wheaton
    Kayo Fortune, LLC

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

# THE LAW OFFICE OF SHAWN SHEARER

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
shawn@shearerlaw.pro

June 13, 2020

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL**

Mr. Marc Meyers
3120 Southwest Freeway #320
Houston, Texas 77098

Ms. Annie Catmull
O'Connor/Wechsler PLLC
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027

Ms. Kathleen O'Connor
O'Connor/Wechsler PLLC
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027

Ms. Catmull:

This is exactly what I expected from you, and I thank you for clarifying, in writing, the Trustees position that all five lawyers in the employ of the U.S. Trustee's Office at present in the matter of In RE: The Bankruptcy of "Jorge Leonel Moncada" (alias George Lionel Moncada) and In RE: GulfStream Trucking, LLC:

1. Are unable to read and/or understand basic insurance policies and determine how they apply to assets that Moncada has sworn were stolen more than a year ago.

2. Will not make any effort to locate assets that all five lawyers are aware were claimed as stolen by Moncada.

3. Will not seek any action, either civil or criminal, against the party that Mr. Moncada has told all five lawyers is responsible for theft of property that Moncada swears belongs to GulfStream Trucking, LLC.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

4. Have no interest in deposing the party who Moncada has sworn is in possession of property that Moncada alleges is owned by GulfStream Trucking, LLC.

5. Have interfered with, and allowed the interference in, and thusly made inadmissible, potential evidence that counsel to Trustee Williams claims was anonymously dropped off to a front desk clerk in some motel in West Texas - not given to Catmull by law enforcement, not given to law enforcement by any party, neither preserved nor recorded in any organized or reasonable manner, not authenticated, has no discernible chain of custody, cannot be used to either prove or disprove Dorrity's complicity in theft of my clients assets, and therefore intentionally disadvantaged Mr. Wheaton to the advantage of Mr. Charles David Dorrity.

5. Will not cut Moncada loose from his sham Chapter 7, even though not one of you, demonstrably, believe his story.

6. Will not allow my client to take any actions that may benefit Mr. Wheaton even though your actions consistently prejudice him.

As you are aware, Mr. Peter Batjer, GulfStream Trucking, LLCs insurance broker and Mr. Charles David Dorrity, the party accused by Mr. Jorge Moncada of having stolen GulfStream Trucking, LLCs property, have been friends "since childhood." My client is now aware that counsels extraordinary and ongoing efforts to aid Mr. Charles David Dorrity extend to Mr. Dorrity's friends, as well.

I urge you, Ms. Catmull, to do your job. Mr. Batjer himself alerted me to the fact that counsel to Trustee Williams was withholding nearly a thousand pages of documents from his company that Batjer himself provided you months ago. Yet you need MY CLIENT to give YOU the insurance information? Do you need him to forward you a copy of the rules that govern the behavior of all lawyers, lawyers who practice in Texas, lawyers who are involved in bankruptcy and their corresponding duties to creditors, the U.S. Constitution, The Bill of Rights, Amendment XIII AND Amendment XIV?

Let me know, because certainly, that can be done.

To this point, Ms. Catmull, all you have done in this matter is:

1.  Intentionally remove from the City of Midland and transport to at least the City of Houston, information that possibly could have been admitted in a court proceeding had such information been properly preserved. That information is now tainted, by you, and rendered worthless for use by all potential creditors in this case and likely also for use by law enforcement. You did that. That is what you, licensed attorney in the State of Texas and paid advisor to the U.S. Office of the Trustee, Ms. Annie Catmull, did.

2.  Refuse to depose the party you claim was the source of the now tainted potential evidence and refuse to answer my client about expense sharing in his efforts to depose that same party, even though you now claim to have made whatever evidence said party may have had inadmissible by your own hand.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

3.   Withhold documents from creditors that third parties have stated in writing are in possession of Trustee Williams counsel.

4.   Refuse to make appropriate and valuable claims on behalf of creditors.

5.   Claim that you do not understand the concept of comprehensive insurance coverage and need my assistance in the matter.

6.   Refuse to allow my client to assert his own claims, despite the fact that you state that Trustee Williams has discarded those claims.

7.   Refuse to alert federal law enforcement to grand theft auto and multiple other felonies that took place over the course of numerous states as described by the debtor multiple times under oath.

8.   Ask me for guidance, even though I am not your lawyer.

9.   Ignore everything that I, my client, Mr. Jorge Moncada, Mr. Peter Batjer, Mr. Terry Moncada, the State of Texas, the State of Wyoming and everything that anyone else tells you in writing that conflicts with your own agenda.

10.  Refuse to provide the assistance that you are obligated to provide the largest creditor, or any creditor, in this case because he is an African American male.

It is becoming clear to me that your agenda includes, among other things, exactly what Mr. Terry Moncada told my client was true when the first trustee "declined" to take the elder Moncada's Chapter 7 and the matter ended up being handled by what is now the ghost of Mr. Ronald Sommers, formerly of Terry Haute, Indiana.

The ongoing efforts of the U.S. Trustees Office to protect Mr. Charles David Dorrity and his conspirators.

All of your actions point to what the younger Mr. Moncada stated to my client in June of 2019 was the original problem faced by everyone in this situation as being a truthful statement. At that time, I had no reason to believe that Mr. Terry Moncada was telling the truth about anything, but as they used to say before the digital age, even a broken clock is accurate two times a day.

Ms. Catmull, your response to my client is unfortunate, although not unexpected. My client understands that you have allegiances to white men in the oil field that you believe supersede your obligations to creditors who are not white men in the oil field, but unfortunately, you are not allowed to act on such allegiances and resulting prejudices when you are a paid advisor to the U.S. Office of the Trustee.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

What I need you to tell me today, is if your response to my client earlier today was the response that you and Ms. O'Connor alone provided Mr. Wheaton, or if you did what was asked of you in the letter of this morning, June 13, 2020, and consulted Trustee Williams before responding.

If you do not answer my client, my client intends to call Mr. Williams himself for the answer on <u>Monday, June 15, 2020.</u>

Please do your job.

Very truly yours,

cc: Mr. Markus Wheaton
    Kayo Fortune, LLC

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

# THE LAW OFFICE OF SHAWN SHEARER

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
shawn@shearerlaw.pro


June 18, 2020


**VIA ELECTRONIC MAIL AND CERTIFIED MAIL**

Mr. Marc Myers
3120 Southwest Freeway #320
Houston, Texas 77098

Marc:

To say that today's phone call did not achieve the outcome I anticipated is more than an understatement. I have given you every opportunity to do right by my client and you simply cannot seem to manage it. Mr. Sommers' commandeering of the call was neither instructive nor helpful to my client. All that Sommers' smug, condescending, self-serving disingenuousness and refusal to take responsibility for his own bad acts accomplished was to convince my client definitively that Mr. Wheaton as an African American male is receiving disparate treatment at Sommers direction.

Please advise no later than tomorrow, **Friday June 19, 2020**, as to why you are ignoring the entity of *IMH Bird Street Pharmacy, LLC* - clearly tied to Solana Beach resident Pat Iantorno the "I" in "IMH" - Moncada being the "M". You have been notified about this entity and it's significance for two months, Ms. O'Connor has known since February.

It was a very big misstep for you to allow Moncada to dump the contents of that storage unit, Marc. I am disappointed. You know that Moncada embezzled from my client and from *GulfStream Trucking*. You know that the IRS will not be far behind in this action, as Moncada's taxes are a sham. You know that the biofuel tax credits in this case belong to Mr. Sommers, despite his desire to push the responsibility off onto Trustee Williams, and I am addressing that with particularity in a different email. I have tried to make these points with you specifically because you do not strike me as a cheater by nature. But I cannot make you do the right thing.

Mr. Sommers gave me the final piece of information that I will need to demand the Terre Haute native's recusal from this matter, when he told my client that **despite overwhelming evidence of Moncada lying and acts of concealment that have resulted in nearly irreparable financial damage to creditors** - all evidence that **exceeds** the standards in other 707 filings in the Southern District of Texas, as well as other filings made by Trustee Sommers himself - that in this matter, Sommers will not initiate a 707, because Sommers allegedly fears that Moncada could simply "file again."

There is no logic available to suggest that Judge Jones would dismiss Jorge Moncada without prejudice when Moncada has lied so egregiously. Judge Jones has authority, but has neither the time, nor the information available to him to independently ignore Trustee Sommer's recommendation and allow Moncada to abuse the bankruptcy process. In fact, it appears that Jones' decision about Mr. Moncada will come down to the veracity of Trustee Sommers, himself.

Would Mr. Sommers have my client believe that Sommer's word means so little, that Judge Jones will not trust his evaluation of Moncada's truthfulness? If so, then why is Sommers allowed to be a "Trustee" in the first place? In truth, Marc, I think that this was exactly what Trustee Sommers just told my client today:

"Mr. Wheaton, I cannot file a 707 because Judge Jones will not believe my assessment of Mr. Moncada."

If Judge Jones does not trust Mr. Sommers, how can my client? There is no other reason to suggest that Judge Jones would simply allow a known liar such as Jorge Moncada to repeatedly waste the resources of the court. Such a decision would not be equitable. Is Trustee Sommers telling my client that Judge Jones is not equitable? Because that is the take away that Mr. Wheaton has at present. That is what my client believes he was told by Mr. Sommers - that Mr. Wheaton should not trust Judge Jones. And while I assured my client that there is no reason **at all** to mistrust Judge Jones, and that His Honor is held in very high regard in the judicial community, I understand why my client came away from our phone conversation with that opinion. Because that mistrust is effectively what Mr. Sommers told my client was the reality of his claim. I do not appreciate that, Marc. Trustee Sommers made my job exponentially more difficult with his behavior today.

Sommers also failed to tell my client why Moncada refiling bankruptcy at a later time would be a net negative for my client. On the contrary, we now know about

Moncada's undisclosed assets, Moncada would have to include post petition assets from the past year or whatever length of time elapsed, and so much has been learned about Moncada's lies, that the starting point might even be advantageous at a later date. Who knows? Sommers provided no reason why that outcome is bad for any creditor, including my client.

In addition, Moncada is unrepresented in this Chapter 7, in part due to the fact that all five Houston lawyers allowed Judge Jones to believe that Moncada was not prejudiced by Ms. Casey's withdraw and that Moncada had counsel in place when Casey withdrew. That is not true. He did not have counsel. He does not have counsel. Such confusion is allowing Moncada extra leeway, as well. Mr. Probus is not allowing my client to utilize his 2004 against Moncada despite not representing Moncada in his Chapter 7. How can this get any worse for my client? No one in this matter is helping Mr. Wheaton. He is being treated like the enemy, and meanwhile, a person who Sommers knows is lying is getting a free pass - why? I think we are all having to accept the reason why, Marc. And it is a very ugly truth.

Mr. Sommers actually suggested that Moncada, a known liar, be allowed an amendment to his schedules. Marc - even the thought of that is bordering on getting Sommers a 1983, I have to be honest with you. From my client's point of view, Kathleen O'Connor, Annie Catmull and Ronald Sommers are all treating him like a criminal, calling his decisions into question when **my client is the creditor.** Sommers wants to allow Moncada extra time and the benefit of a do-over on his falsified schedules, and meanwhile, Moncada's lawyer wants my client to pay sanctions because my client had to pay for subpoenas that **should have been sent by the Office of the U.S. Trustee.** And Moncada skates. My client pays. My client gets hauled on front of the judge to answer - for what? Having earned $400,000.00 that **you are well aware that Moncada stole** - and all because my client is a black man.

This is outrageous and I believe that you are aware that it is.

The biggest mistake that Trustee Sommers made, is that he told my client directly that Sommer's does not believe Mr. Moncada, ***but*** will not utilize a 707 because Sommers understands that as a liar, Moncada will likely game the system a second time. First of all, Sommers is a lawyer. If he knows of perjury, he cannot ignore it. Secondly, the basis of Sommer's "logic" regarding Moncada's likelihood of refilling **HINGES** on Sommer's absolute conviction that Moncada is undoubtedly a liar.

If Sommer's has any belief that Moncada is being truthful, Sommer's would have merely said to my client today - "you are correct, Mr. Wheaton, Jorge Moncada did not complete this process properly at this time and is therefore ineligible for a discharge. However, please understand that this discharge has some judicial discretion, so it is possible that Moncada could clean up his act and refile a legitimate petition, at which time this would be revisited."

Mr. Sommers did not say that. On the contrary, he indicated that Moncada was such a scumbag, that he would likely try to put one over on the system and ultimately place my client in an even worse position later with more lies. Mr. Sommers' claim that his own failure to utilize the available 707 process, is somehow a "favor" to Mr. Wheaton is abjectly untrue. It is not a favor to any creditor. However, Sommers **unquestionably** attempted to present Sommers' failure to act, as being beneficial to my client. In doing so, Mr. Sommers has now sealed his own fate.

Apparently, in a very poor effort to dissuade my client away from Mr. Wheaton's instinctual belief that Wheaton is being treated in a disparate manner by the lawyers and trustees in this process (which he is) Sommers suggested multiple times that the trustee is somehow doing my client a **favor** by *failing to file* a 707. Of course that is ludicrous, a 707 is the only appropriate thing for Sommers to do. But nevertheless, Sommers tried to convince my client that Sommers is acting to singularly advantage Mr. Wheaton.

The problem is, Marc, that Sommers is not allowed to be in the business of handing out favors. My client does not want any favors. He wants **justice.** Trustee Sommers intentionally described a course of action to my client, that Sommers intended my client to interpret as favorable only to my client, even if it disadvantages others. Sommers was lying to my client. Failing to file a 707 is no favor. But Sommers did not allow a lack of truthfulness to stop him from trying to convince my client that such failure is a favor. And in doing so, Sommers has now proven that Mr. Sommers does, in fact, engage in disparate treatment of creditors - likely on a routine basis.

The only thing Trustee Sommers did during today's phone call, was confirm that he demonstrates favoritism towards certain parties. Mr. Wheaton is not interested in that. Such behavior is not a way to prove a lack of disparate treatment. If anything, Sommers statements to and demeanor towards Mr. Wheaton on the call serve as confirmation that Sommers knows he engages in disparate treatment.

Of course what I knew immediately to be the **real reason** that Sommers fears Moncada being tossed on the 707 he deserves and possibly refiling later, is because if

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

Moncada refiles, Sommers has no assurance that Sommers will be able to draw the case a second time and thusly protect Dorrity and the rest of this syndicate.

This is **exactly what Terry Moncada told my client , in 2019, was happening.** My client had no reason to believe the younger Moncada, but the things that Terry told Mr. Wheaton are proving to be accurate.

Sommers has now told me what I need to know, and once I finish consulting the other legitimate creditors in this matter, I will take the necessary action to remove Mr. Sommers as Trustee. By way of a time line, likely this will take about two weeks to accomplish.

Please advise on *IMH Bird Street Pharmacy, LLC.* I am writing you separately about the issue of tax credits. I will send formal notice of Mr. Wheaton's intent regarding the civil rights claims he intends to assert after I finish the notice - likely by Sunday, June 21, 2020.

Very truly yours,

cc: Mr. Markus Wheaton
    Kayo Fortune, LLC

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

# THE LAW OFFICE OF SHAWN SHEARER

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
shawn@shearerlaw.pro

June 10, 2020

<u>**VIA ELECTRONIC MAIL AND USPS**</u>

Mr. Marc Meyers
3120 Southwest Freeway #320
Houston, Texas 77098

Marc:

I received your communication and discussed it with my client. I want to be very clear with
you that Mr. Wheaton is not at all pleased with the status of Mr. Jorge Leonel Moncada's
bankruptcy. My client has lingering questions regarding, with particularity, Mr. Sommers
early decision declaring this a "no asset" case, followed by an awkward attempt to
inexplicably hand write a document on November 25, 2019 in order to prevent my client
from litigating against *GulfStream Trucking, LLC* only to then add the expense of three more
lawyers who have literally not done even the most basic work in order to collect assets that
are obviously available to my client. The failure of the U.S. Trustees Office to make an
insurance claim on property that Mr. Moncada has sworn under oath was paid with my
client's money, and Mr. Batjer has now stated was insured at the time of loss, (under policies
also paid for with my client's money) is inexplicable. One does not need to have a law degree
to know that an insurance claim is the most basic method used in this country to recoup
loss.

The neglected insurance claims, as well as the contents of the storage unit(s) leased by Mr.
Moncada since, by Moncada's admission, at least 2009, are the property of Mr. Sommers.
My client was, to say the least, puzzled as to why Mr. Sommers had not already confiscated
the property in Moncada's storage unit(s), or at the minimum, barred entry to any storage
units leased by Moncada or any of his designated representatives. Mr. Sommers has the
power to do so, and has had that power for over a year. When I shared your letter from
Moncada with Mr. Wheaton, he was under the impression that you and Mr. Sommers had,
when you wrote Moncada on June 8, 2020, already contacted the storage unit in question,
and either inventoried and claimed its contents, or, at a minimum, removed Moncada's
ability to continue to enter the unit(s).

I had to explain to my client, that neither of those things has happened.
I do not know how to explain any more thoroughly to you the problem that the U.S.
Trustees Office is creating in this matter. Surely you are aware that George Floyd was buried

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

in Houston yesterday, and unless you live in a cave, you see what is happening in this country right now. I told all of you over six months ago, that disparate treatment of my client is not going to be tolerated. While Mr. Wheaton is a young man, he is not a stupid man. He understands insurance. He understands that when a person lies about his name on a bankruptcy filing so that he can continue to own and move assets under aliases for a year while the Trustee's office pretends to look for assets, there is likely a reason for that occurrence. In this particular matter, it would appear that despite my many pleas that someone involved in this bankruptcy do something of substance, not one of the lawyers involved feels compelled to aid my client.

Yesterday was a painful day for all members of our African American community. Yet not one person with whom I have outstanding communications in this matter saw fit to answer those communications, if for no other reason, than to demonstrate sensitivity to my client and his already stated feelings about having received disparate treatment in this matter from the Office of the U.S. Trustee. This should be common sense! How many other bankruptcies are you currently involved in where the dollar amount exceeds a million dollars and an African American individual is the largest creditor?  None? How often do you ignore the needs of creditors like BBVA and Haliburton? Never? A $400,000 claim - not coincidentally the exact amount of money that Jorge Moncada claims to the IRS to have lost in 2018 - is not a small claim, particularly for an individual person. Yet not one of you has done anything to as much as even the playing field for my client, let alone to help him recover his stolen money.

I have made repeated attempts to lead all of you in the direction of how to do your jobs, in part because I do understand that you do not have unlimited resources. Yet not one of you will take the reigns. You all want my client to bear the cost of this investigation, and then you all want to be paid fees.

Simply put, Marc, that is not going to happen in this case. Your behavior has given rise to multiple other claims by my client, and I believe you all are aware of that. At this time, if you and Mr. Sommers do not immediately request that Moncada and his representatives and agents be banned from Moncada's storage unit(s), formally request the retention of all video footage and records of persons who have entered the unit for as long a time as the owner of the unit(s) legally keeps such records under applicable state law, and take the appropriate steps to confiscate the contents of the unit(s), I will be forced to intervene.

Any attempts by Jorge Leonel Moncada and/or his agents to remove anything from his storage unit(s) is a violation of the stay. You are aware of this. Yet to did not state that to Moncada in your writing, despite the fact that you are aware that he has no counsel at present in his Chapter 7 filing. There is no excuse for your failure to instruct Moncada to surrender his key to the Trustee immediately and to not enter the premises. This should have been done a year ago.

In addition, the demeanor in your writing to Mr. Moncada was extremely upsetting to my client. While I do not believe that Mr. Wheaton expects you to be openly confrontational with Mr. Moncada at this point, this is also not a Rotary Club meeting where two guys just

ran into each other and exchanged pleasantries. Mr. Moncada should be scared. He is lying. You know he is lying. Yet he is not scared. Because for some reason, he seems to think that lying is going to succeed in getting him out of his fraud.

It is not. Please do your job. Let me know that you have taken the steps as I have described them in this letter no later than the close of business June 11, 2020 or else I will seek a different remedy for my client with regard to the contents of Moncada's storage unit(s) by the end of the week, myself.

To this point, you have not indicated that Mr. Sommers will be seeking to file a 707, nor that he will join my client in his 523 and/or 727 claims. I have given you every opportunity to do so. I requested a phone call with you to take place this week, and you have not provided me the courtesy of an answer as to your availability.

Marc, if you want me to give you the same treatment I am about to give Kathleen and Annie, I can and will. To this point, I have not painted you with the same brush, because you have provided at least the appearance of cooperation with the largest creditor in this matter, as you are required to do. If you want to distinguish yourself in this mess as a lawyer who is at least attempting to do his job, you can let me know when you are available for a phone call. If you do not, then I will take the steps that I believe are needed in order to secure my clients ability to obtain his assets without regard for any difference that I may have formerly believed existed between these two groups of U.S. Trustees and their counsel.

At this point, the efforts of Mr. Sommers and all other parties involved on behalf of the U.S. Trustees Office are demonstrably nothing more than a game of keep away designed to prevent my client from using the legal methods available to him in order to collect his money from Jorge Moncada. My client was willing to pay to recover his money. You stopped him. Blocking Mr. Wheaton's efforts while enabling Moncada to hide, move assets and fabricate stories as we move along is not the job of the U.S. Trustees Office. That you have chosen to target my client with such behavior is shameful and will not be tolerated. Please let me know what Mr. Sommers is going to to do remedy this situation and when we can speak by phone.

Very truly yours,

cc: Mr. Markus Wheaton
     Kayo Fortune, LLC

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

# THE LAW OFFICE OF SHAWN SHEARER

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
shawn@shearerlaw.pro

June 15, 2020

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL**

Mr. Marc Meyers
3120 Southwest Freeway #320
Houston, Texas 77098

Marc:

Please advise on what actions have been taken regarding Mr. Jorge Leonel Moncada and his attempt to obscure his storage unit(s) from the Trustee. I am certain that you have now checked Moncada's schedules wherein he swears that he has no storage unit and no sports equipment - both are now deemed lies by Moncada's own written response to you of June, 2020.

I am not sure how much more money you and Trustee Sommers expect my client to spend on this before you throw Moncada out on a 707 but I will assure you, every day that goes by this situation gets worse for Jorge Leonel Moncada, Charles David Dorrity and anyone who may be aiding them. The refusal of Trustee Williams' Counsel to meet my client in person, file an insurance claim or search for assets is inexplicable, and will not end well for either of them despite my many urgings that they perform their duties.

I have also found through discovery, an e-mail from Jennifer Casey (attached) to you and Trustee Sommers dated November 12, 2019 wherein Jorge advises you that Chuck Dorrity is attempting to sell the business that Moncada believes has absconded with the *GulfStream Trucking, LLC* assets. Even though Kayo Fortune is mentioned in this e-mail expressly by Mr. Moncada the email was never forwarded to me and I was not given timely information upon which to act.

You and Trustee Sommers intentionally kept this information away from me and my client.

Rather than doing what you are **legally required to do**, and taking action to prevent Dorrity from stealing and selling the assets you:

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

1. Bought time  with a non-descript, vague e-mail requesting "more information regarding the source"  - yet cryptically do not ever name that source or follow through on any of the information Casey provides you.

2.  Nine days later, on November 21st, filed an EXPEDITED MOTION to allow Trustee Sommers to both
  a. vote the *GulfStream Trucking, LLC* membership interests and
  b. put *GulfStream Trucking, LLC* into a Chapter 7

3.  Forced my client to withdraw his Notice of Default Judgement against *GulfStream Trucking, LLC* - despite the fact that Moncada himself had violated the stay order and should already be thrown out of this process on that basis alone

It must have been a bitter pill for Ms. Casey, Moncada's Chapter 7 attorney, to take her turn in line and choke down the blame in this farce when she appears to be the one lawyer who acted with integrity.  This November 12 email demonstrates that neither you nor Trustee Sommers gave my client a second thought when you attempted to create a scenario that will allow my client's assets to vanish without explanation.

I am going to tell you again, Marc. That simply is NOT going to happen. I am a Civil Rights lawyer and I have a federal practice in Constitutional law. I also know how to do a bankruptcy. But the civil rights violations here are clear. I did not enter into this bankruptcy anticipating that it would become a matter requiring the invoking of my client's right to be treated equally. But you have allowed this to devolve into a Jim Crowe level nightmare. And not one of you will have immunity from the reach of the Constitution or it's amendments.

The Chapter 7 filing for *GulfStream Trucking, LLC* was completed on **November 26, 2019** - a full two weeks after you and Trustee Sommers learned the location of the assets - directly **from Jorge Moncada and his attorney.** This information was not ambiguous. You have both known since at least November 12, 2019, where assets of *GulfStream Trucking, LLC* are stated by Mr. Moncada to be located, and you both allowed such assets to be sold, stolen, or otherwise compromised **while simultaneously violating my client's civil rights and refusing him any ability to recover assets.** If you do not believe Mr. Moncada - then you must utilize a 707 and throw him out of this process immediately.

On November 26, 2019, Trustee Ronald J. Sommers, upon learning that my client had beat him to the punch and filed a petition against Dorrity based on the results of Jorge Moncada's first two 341 meetings, (yes, that's right - **first two** 341 meetings for a "no asset" Chapter 7) hastily scribbled a petition in something resembling a pre-schoolers broken crayon. Sommers likely found at least one crayon left behind by the dozens of minor children who inexplicably wander of the streets of Marfa, only to then disappear into the night. No doubt Trustee Sommers was trying to enjoy a leisurely Thanksgiving dinner with his wife in that very city when someone who owes him a favor from the Western District of Texas alerted Sommers that his filing - aimed to protect the father-in-law of JR Christy whose mother hails from Sommer's native Terry Haute, Indiana - was going to be one day late.

Despite Sommer's best efforts, the date of November 25, 2019 being awkwardly hand written on the petition did not change the reality that the Trustee's petition could not be filed until November 26, 2019. Therefore Kayo Fortune, LLC's petition had the first shot at Mr. Dorrity, and it is **quite clear** upon reading this attached November 12 email, and seeing what has been done by you and all other lawyers involved in this charade, that Dorrity is to be protected at all costs. In fact, Trustee Sommers was so singularly focused on protecting Mr. Dorrity, that Sommer's neglected to notice that the entity of *GulfStream Trucking, LLC* had been dissolved in Wyoming at Mr. Moncada's instruction merely one day after Moncada's second 341 hearing, thusly calling into question both the November 21, 2019 decision to request an expedited motion and the November 26, 2019 move into Chapter 7.

Mr. Randy West Williams (not coincidentally, now working at a small Houston firm in tandem with his wife who he met while in school in - you guessed it - **INDIANA**) the U.S. Trustee for *GulfStream Trucking, LLC* has taken no action against Mr. Dorrity over the last seven months. To any outside observer, it appears that Mr. Dorrity has been being protected for the past 12 months by the United States Trustee's Office and its representatives and counsel.

I truly hope that is not the case. But at this point, my client feels entirely disenfranchised. I am going to ask you one more time - when is Trustee Sommers going to make use of his available 707 to toss Moncada for his lies? If I do not receive an answer by **Friday, June 19, 2020** you are leaving me no choice but to ask that at least Sommers and likely Williams both recuse themselves from this matter.

This is a long game. Marc. I promise you. I understand that the community of bankruptcy lawyers in every city is a tightly knit group. I understand the need for efficiency. But I will not accept the disparate treatment that my client is currently receiving. That you throw Mr. Probus a bone on occasion due to the fact that he has an African American spouse is not enough to demonstrate that you are treating my client in any way that is fair or legal.

Ms. O'Connor's hand in this - from the ridiculous sudden 8 am appearance of her former firm claiming to represent AIM Bank at the eleventh hour in order to avoid AIM having to admit the existence of TNM Oilfield Service's existing bank accounts and thefts, to Probus' transparent cries for help and sanction to Judge Jones even though Moncada lied more than twenty times in his schedules about even the most basic truths - is both transparent and will ultimately be ineffective. I understand that Kathleen is used to being able to throw the weight of more than one of her brother's around, but I really do not believe that any sitting judge is in favor of what is happening to my client in this situation, and no logistics provider worth his salt continues to fight a lost cause merely out of stubbornness.

Quite frankly, Marc, you all have allowed this to drag on to the point that I now understand exactly how this operation is working and why it is in place. I understand protectionism, I understand a lot of things about business. But I do not understand, nor do I accept, a group of white, southern lawyers aiding a third generation Plainview farmer in pursuit of any kind of overarching goal, at the expense of my client and his civil rights.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

Mr. Jorge Moncada does not have representation at present in the Chapter 7. You have an **obligation** to inform him of his responsibility to turn over whatever is or was in that storage unit, although surely it has been emptied by this time due to your casual language and inexplicable choice to tip off a known liar about this matter. He has said on his schedules that he has no sports equipment. Whatever is or was in that unit, is owned by Mr. Sommers at present, and has been paid by Moncada for at least 55 consecutive months without interruption, added fees, rollover, auction or any other demonstrable delinquency. Moncada has allowed **every other financial obligation** in his life to become delinquent at one point or another except for the contents of his Solana Beach storage unit. Once you became aware that he lied to you about its existence, you had an **obligation** to creditors to preserve all video footage, all records of entry and exit and demand that Moncada be denied his discharge.

The man has lied about his legal name. I had to use **seven requests for admission** to find out the truth about what his actual name is. Trustee Sommers and Trustee Williams both looked at Moncada's drivers license, and they both knew that Moncada lied about his name. Neither acted on that knowledge. Whatever reason you had when this debacle began that you believed justified allowing my client to receive this kind of discriminatory treatment at the hands of the U.S. Trustee is no longer viable. There is really no salvaging this in the long run. The longer you let this drag out, the more information becomes available about your actions.

Simply put, had you believed Jorge Moncada, someone from the Trustee's Office would have followed up on the things he told you about the location of the trucks he claims were purchased with my client's money. No one has. So either you are purposely allowing the assets to be stolen because you do not want to see the only creditor to have made an in person appearance or attempt to find assets - an African American male - recover his money - or you disbelieve Mr. Moncada and you toss him.

Time is running short for this part of the process. My client is extremely disappointed in the treatment he has received, and, as you know, is planning on making a trip to Texas to search for the assets that he has been told by counsel to Mr. Williams and others are in Texas, but that Williams will not attempt to locate. Ms. Catmull's treatment of Mr. Wheaton is despicable. Mr. Wheaton is also planning on meeting with various members of the National Football League in the wake of the horrific murder of George Floyd to discuss what official statements of players - past and present - will be given Commissioner Goodell's tardy but appropriate decision to side with his workforce on the matter of "taking a knee."

My client is preparing his forum. My client has a forum. So, Marc, I am telling you one last time. You need to let me know why Trustee Sommers has not sought to dismiss Moncada on the basis of a 707. Or better yet, let me know that he is going to do so, and when. I asked you if you have even **one** other bankruptcy proceeding at present that is over a million dollars as Moncada claims where the largest and only creditor to appear in person is an African American male who is owed more than $400,000.00(USD) and you have not answered me.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

The attached email is very disappointing, but it is reality. You have a short time to do what you know is right remedy the wrong you and Trustee Sommers have done to my client. To allow your poor decisions to either fester or snowball is not going to cause my client to disappear, rather it just creates needless expense and is not the intended use of the court system. Please do your job.

Very truly yours,

Enclosed - Email from Jennifer Casey 11-12-19

cc: Markus Wheaton
    Kayo Fortune, LLC

# THE LAW OFFICE OF SHAWN SHEARER

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
shawn@shearerlaw.pro


June 16, 2020

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL**

Mr. Marc Myers
3120 Southwest Freeway #320
Houston, Texas 77098


Marc:

I am following up on my letter of June 15, 2020 to let you know three things.


1.  I will be phoning you on **Thursday, June 18, 2020** along with my client, Mr. Markus
    Wheaton. Mr. Wheaton has some questions for you. I asked you more than a week ago
    to give me a specific time when you are available to speak by phone, and you have
    completely ignored me. Ignoring me, is ignoring my client. You have had a full calendar
    year to demonstrate that you are acting in my client's best interests, or serving **any**
    creditors beyond Mr. Sommers. You have not done so. Two weeks is ample time for you
    to provide my client with the courtesy of a phone call. You do not have the ability to
    simply ignore any creditor, let alone the largest creditor in a Chapter 7. ==**If you continue
    to ignore my client, refuse his calls, ignore the lies of Jorge Leonel Moncada,
    fail to collect assets and demonstrate disparate behavior towards Mr.
    Wheaton, my client intends to bring at least one federal civil rights action
    against you in the proper forum.**==

2.  My client wants an answer regarding the biodiesel tax credits and other fuel credits
    available to him as a result of Mr. Jorge Moncada's exorbitant fuel purchases with my
    client's money and the fact that Moncada neglected to utilize those credits on his tax
    returns, despite having consolidated  the operations of *GulfStream Trucking, LLC* onto
    Schedule C of his 2018 1040 . The glaring omission of fuel related tax credits from
    Moncada's return and the fact that they are non-transferable  is concerning. The recent
    20 year conviction of a married couple in the State of California for the illegal sale of tax
    credits, ghost loading and other trucking related infractions has given my client reason
    to question Moncada's and Trustee Sommers apparent desire to protect Mr. Charles
    Dorrity. Those credits belong to Mr. Ronald Sommers, not to Mr. Randy West Williams.
    Mr. Wheaton wants to know why Mr. Sommers has not pursued those credits, or any
    other assets, including the contents of a storage unit now known to be located in Solana

Beach, California, and having been maintained by Jorge Moncada for **at least** 55 consecutive months without failure of payment or disclosure to creditors. In addition, given that the storage unit is located in the home city of Mr. Pat Iantorno, Moncada's former business partner, my client wants to know what is being done about the entity known as *IMH Bird Street Pharmacy, LLC.* This entity was disclosed to Ms. Kathleen O'Connor by me in person in February of 2020, and despite Ms. O'Connor's assurance that she would "look into it" she has done exactly nothing. I disclosed this entity to you approximately one month ago, and you have not, to my knowledge, done any work to determine its validity or relationship to the storage unit, which you are also ignoring.

3. Mr. Dennis Massengill and Ms. Candy Cotten, who, through use of the entity *Hightop Ranch, LLC,* are in possession of <u>at least</u> $15,000.00 of my client's money, have suddenly placed their ranch for sale. While this is certainly their right, my client questions the transfer of money to this couple, they are aware of my client's questions, and it seems odd to me that a rancher would have the ability or desire to simply dump his ranch and relocate in the midst of a pandemic. It does **not** seem odd that a party involved in a scam that has, among other things, defrauded my client, would possibly relocate when the illegal sales of RINS, biodiesel fuel credits, and other possible crimes and transgressions are being investigated, might "disappear." **You are now noticed that Mr. Dennis Massengill and Ms. Candy Cotten of Clarendon, Texas, are attempting to sell an asset when it is known to Mr. Williams, Ms. O'Connor and Ms. Catmull that my client believes that those parties have received fraudulent transfers of my client's money from Jorge Leonel Moncada.**

Please let me know when you are available on Thursday, June 18, 2020 so that I may set an appropriate time for a call to occur that can include Mr. Wheaton. **DO NOT CONTINUE TO IGNORE MY CLIENT. HE HAS GIVEN YOU ONE YEAR TO HANDLE THIS PROBLEM WITHOUT SO MUCH AS ONE PHONE CALL TO YOU.**

Very truly yours,

cc: Mr. Markus Wheaton
    Kayo Fortune, LLC

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

# THE LAW OFFICE OF SHAWN SHEARER

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
shawn@shearerlaw.pro

June 18, 2020

## VIA ELECTRONIC MAIL AND CERTIFIED MAIL

Mr. Marc Myers
3120 Southwest Freeway #320
Houston, Texas 77098

Ms. Annie Catmull
O'Connor/Wechsler PLLC
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027

Ms. Kathleen O'Connor
O'Connor/Wechsler PLLC
4400 Post Oak Parkway
Suite 2360
Houston, Texas 77027

Mr. Myers, Ms. Catmull and Ms. O'Connor:

Mr. Sommers informed my client via phone call today that he agrees that Trustee Williams must make every effort to locate creditor assets, but that Sommers is (not surprisingly) unable to aid Mr. Wheaton beyond a few disingenuous comments designed to give the *impression* that Sommers is not obstructing, when in reality, Trustee Sommers created this entire problem along with Mr. Myers when they both deliberately withheld information form my client, ignored Mr. Moncada's November 12, 2018 mandate that my client be informed of Mr. Dorrity's attempt to sell the assets of *GulfStream Trucking, LLC* through AIM Bank and O'Connor favorite - TNM Oilfield Services, followed by Mr. Myers deliberate tip off of Mr. Moncada to clean out his Solana Beach Storage Unit so that creditors will be deprived of assets to which they are entitled.

I believe Mr. Sommers actual words to my client were "Go get 'em." Which is exactly the kind of dismissive, racist, condescending language that is the hallmark of this entire charade.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

All I can say is - WOW. It is not 1820. It is 2020. Please adjust your language accordingly, as I am basically out of ways to convince my client that you are all anything short of candidates for the Grand Dragon of the latest iteration of the KKK. Does the U.S. Trustee's Office tell Halliburton to "Go get'em?" How about Chase Bank? To say that my client is even more offended now than he was before, is an understatement. So at this point, you are all in the same position, and understand that due to errors made originally by Mr. Sommers that prejudiced creditors irreversibly, and now pawned off onto Trustee Williams, in addition to the multiple transgressions made by Williams' Counsel adds up to a civil rights claim that will be filed against you on behalf of my client.

You are ALL so noticed, minus Mr. Williams, who my client will contact himself on Monday. Mr. Myers, please notice Mr. Sommers immediately. You will both receive a formal notice as to your violations.

Nonetheless, for purposes of this matter, please take notice of the attached documents. Ms. O'Connor informed me, in February 2020, and Ms. Catmull reiterated in March 2020 that West Texas native Catmull had "gone to Midland herself" in an effort to retrieve assets now under the control of U.S. Trustee Mr. Randy West Williams in the matter of *In re: GulfStream Trucking, LLC*. Further, you both told my client, through me, that somehow you had been given information that Mr. Dorrity is "working for" an entity called "Gesch Construction" - but that upon arrival in Midland, Catmull in fact had an in person encounter with Mr. Gesch, (rendering Mr. Gesch a witness in this proceeding) and thusly discovered, from the mouth of Chance Gesch himself, no less, that Mr. Gesch has "never heard of" Mr. Dorrity.

The implication, of course, is that if Mr. Gesch has never heard of Mr. Dorrity, Mr. Dorrity is not employed by Mr. Gesch. What is interesting about this kind of one-sided presentation of information, is that so often the parties presenting it fail to understand that the intended recipient has absolutely no idea what the significance of that information is at the time and in the manner in which such information is being presented. To wit: My client is not the party who suggested that Mr. Gesch and Mr. Dorrity know each other. My client does not know either man. My client did not loan money to either of those parties. My client does not care where either party lives, works, vacations, or does any other thing unless such parties have information that will lead my client to his assets.

What was obvious to me at that time, and has only grown more interesting as this debacle is needlessly dragged out, is that it is very important for Ms. O'Connor to protect  Mr. Dorrity and even more important that she protect Mr. Gesch.  There was literally **no other discernible reason** for any of that information to have been presented to counsel for my client. The forced casualness of the conversation combined with the fact that each Houston based lawyer involved in this matter to this point appears to believe that every lawyer in America both knows and cares about local players in the South Texas arena, has been the most telling thing about this entire experience.

Speaking for the majority of lawyers in America, I feel confident in saying that unless those South Texas players have information relevant to claims that any of us are presenting - we

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

neither know nor care about who they are or the influence they may have. So this kind of staged and deliberate information dump was wildly out of place from the onset of my interaction with Ms. O'Connor.

You are each aware of my client's opinion about:
1. Your mishandling of Mr. Charles David Dorrity, in every respect available to you
2. Trustee Williams *apparent* ( I say "apparent" because not one of you will verify that Trustee Williams himself has actually instructed you to do anything - or as it is in this matter - to **abstain** from action) lack of interest in deposing Mr. Dorrity.
3. Williams' inexplicable simultaneous belief that Jorge Moncada should remain in Chapter 7 despite no action being taken against the party that Moncada swears has assets of *GulfStream Trucking, LLC.*
4. The tragic refusal of Williams' counsel to pursue **simple and available insurance claims timely for the benefit of creditors.**
5. Your compromising of documents and things that may have been in Dorrity's possession and that are responsive to the subpoena you are making the largest creditor in this matter to enforce on you and Trustee Williams at present.

This situation is both wasteful and unnecessary. Whatever your end game is, I assure you, it does not trump your current trampling of my client's basic civil rights.

I am attaching the results of basic searches that have been available to all of you since inception of this case. What appears to have taken place, if one is to believe Jorge Moncada's version of events, is that one of the two following options.
1. Moncada believed that he was buying assets and was frauded by Dorrity, and others, who funneled money to (among others) Navistar, CarCat/Catrina Levya, OTS Enterprises, IMCO Trailers, G&J Trucking (as a side note, even the simplest review of Moncada's documents demonstrates that Moncada attempts to sell himself the same truck at least three different times, two of those transactions originating at the bizarre Groom, Texas apparent shell company G&J Trucking), TNM Oilfield Services, Bret Pels/FactOne Capital, Nelson Family Trucking/Badlands Investments (I have an AMAZING follow up letter about Nelson for you later today - so stay tuned - it is truly fascinating) Moncada Marketing, Aranda Oil and Gas, Manuel Tamez/InterCargo Brokers of Laredo, Hightop Ranch, Ye Olde Pancake House, Trimble-Batjer and various other parties that Dorrity deemed proper to give the impression that a business with trucks exists that **never existed** and were merely the property of Mr. Chance Gesch the entire time. In that case, Dorrity and Moncada effectively operated a RICO in an effort to aid parties in either laundering of money, or just outright theft of investor money, or both.

2. Mr. Chance Gesch/Gesch Construction stole *GulfStream Trucking, LLC's* assets and business in 2018, and Moncada is telling the truth about at least some aspects of what happened. Of course, Moncada has still committed fraud against my client, but as this relates to Trustee Williams and his obligations, what matters is who has the assets that Moncada swears were purchased with the funds of creditors, the largest of which is my client, Mr. Markus Wheaton.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

No matter the actual outcome, what is apparent, is Trustee Williams' counsel's use of some shabby boxes in Ms. O'Connor's Houston office ostensibly filled with unverifiable documents as bait to entice Wheaton's counsel to come to Houston - at Wheaton's expense - so that Ms. O'Connor could chaperone and drop in verbal references about parties who are of no significance to my client or his claims, but are of great significance to O'Connor and the rest of this group.

This attempt at misdirection is an abject failure.

For purposes of what Trustee Williams is *supposed to be doing to aid creditors* I have attached information that was readily available to all of you, about the fact that Mr. Dorrity (or some other party, unauthorized by the terms of my client's agreement with Moncada) certainly not only knows Mr. Chance Gesch, but shares are least one real estate lease with Mr. Gesch. It would appear that whatever power units claimed to have existed and been owned by *GulfStream Trucking, LLC* and located at 1301 S County Road 1082 Midland, Texas 79706 (or, in an effort for some party in this matter to deliberately obstruct - an address of 3101 S County Road 1180 - which appears to not exist on planet earth as a legitimate address, minus the signs that show the work of a six year old who attempted to overlay "GESCH CONSTRUCTION INC"on a different building, yet somehow ended up with "GESCH CONSTRUCTION INC INC" in one photoshop, and "GESCH CONSTRUCTION INC" in another photoshop) are at present now owned and operated by Mr. Gesch.

Please **do not make any trips to Midland for purposes of this case without first offering my client the option to accompany you with his own counsel of choice.** Your behavior to date is concerning, and it is now necessary that counsel for Mr. Wheaton be involved in Trustee Williams' on sight attempts to locate assets. Mr. Myers - do not tip Mr. Jorge Moncada off to **anymore undisclosed assets that belong to creditors.**

Once again, I will point out, that my client continues to **inform counsel for Mr. Williams** of the relevant information that Mr. Wheaton collects regarding asset location and does not simply storm property and try to intimidate or grab assets. **My client continues to request the aid of the Office of the U.S. Trustee.** Mr. Wheaton has received no such aid. Please act on this information timely, and please give me a timeframe so that Mr. Wheaton may make his travel plans accordingly.

Also, please look for an official statement in this matter which will be released in celebration of what people who are not consumed by racism know as "Juneteenth." I tried to get all of you to behave in a civil, professional and non-discriminatory manner towards Mr. Wheaton, but none of you will. I am thoroughly disappointed.

Please provide me the complete results of your conflicts check no later than close of business (5PM EST) tomorrow, **Friday, June 19, 2020.**

Please let me know when you plan to go to Midland to investigate this information, immediately. Please let me know what you find out about Mr. Steve Christy - Charles Dorrity's daughter's father-in-law and former in law of the Bays family of Terre Haute. Understand that

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

my client will be seeking the recusal/dismissal of at least Mr. Ronald J. Sommers due to Sommers admitted ties to the Indiana constituency in this fraud, and depending on the outcome of my clients communications with Mr. Randy West Williams, possibly Mr. Williams, as well.

It is difficult to judge Mr. Williams, and we want to be fair. His counsel will not communicate. My client will not treat Mr. Williams the same way you are all treating him. He will reserve judgement until he both speaks to the man and hears from Trustee Williams himself.

My deadline on your conflicts check is firm.

Very truly yours,

ENCLOSURE - DORRITY/GESCH - MIDLAND
(13 PP)

cc: Mr. Markus Wheaton
    Kayo Fortune, LLC

-

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

## RE: G. Moncada and Gulfstream Trucking Chapter 7 Cases (19-33426 & 19-36569) (Part 4 Marshawn Lynch Press Conference)

From:  Shawn Shearer (shawn@shearerlaw.pro)

To:    marcmyers2006@yahoo.com; aecatmull@o-w-law.com

Cc:    rsommers@nathansommers.com; rww@bymanlaw.com

Date:  Monday, January 13, 2020, 1:15 PM CST

---

I am sure you all have read, watched, and/or heard what Marshawn Lynch said after the Seattle v. Green Bay game last night regarding society's carelessness surrounding the exit of players from the NFL. If you have only read it, listen and watch. If you have not read, watched or listened, do all three. A link is attached below.

In less than a season off of the field, Mr. Lynch learned quickly what the world will do to ex-players. Markus Wheaton is learning the same thing. There are vultures out there ready to pounce on these unsuspecting African-American men. These players are learning that society values them only for their athleticism (despite society's preaching otherwise). These players are learning that once they are done playing (often with damaged bodies and minds), the only significant assets they have accumulated are available for the taking by fraudsters and society provides them no structure or interest to either effectively resist on their behalf or to recover what has been unlawfully taken from them.

Mr. Wheaton is going to be telling the same story as Mr. Lynch, especially if the perpetrators are allowed to get-away with it under the circumstances of these cases. Given Mr. Wheaton's relationship with Mr. Lynch, it appears the story in this case is just beginning to unfold. The question is whether you and your employer are going to be the ones to take any action.

https://www.si.com/extra-mustard/2020/01/13/seahawks-packers-marshawn-lynch-press-conference-video

**Shawn E. Shearer**

The Law Office of Shawn Shearer, P.C.

3839 McKinney Avenue #155-254

Dallas, TX 75204

(214) 717-1828

www.shearerlaw.pro

**THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.**

**Marc Myers**

| | |
|---|---|
| **From:** | Shawn Shearer <shawn@shearerlaw.pro> |
| **Sent:** | Wednesday, January 15, 2020 10:21 AM |
| **To:** | Ron Sommers |
| **Cc:** | Marc Myers; Annie Catmull |
| **Subject:** | Terre Haute, Indiana |

Mr. Sommers:

It has come to my attention that you and your wife are from Terre Haute, Indiana. According to my investigation, a significant participant in this fraud is a family operating a trucking business, and that family resides in and around Terre Haute. The names appear throughout the documents presented in Mr. Moncada's bankruptcy filings.

I need to know if you know these people personally. Being from Iowa originally, I am aware that not "all Iowans know all other Iowans" so to speak. However, given the scale of this fraudulent activity, it is my responsibility to my client to determine your ability to be objective in your role for the US government.

Please advise.

-Shawn Shearer

Shawn E. Shearer
The Law Office of Shawn Shearer, P.C.
3839 McKinney Avenue #155-254
Dallas, TX 75204
(972) 803-4499
www.shearerlaw.pro

THIS EMAIL MAY CONTAIN CONFIDENTIAL AND/OR PRIVILEGED INFORMATION AND IS INTENDED FOR USE ONLY BY THE NAMED RECIPIENT. ANY OTHER USE OF THIS INFORMATION OR ANY ATTACHMENTS IS FORBIDDEN. IF YOU RECEIVE THIS EMAIL IN ERROR, PLEASE DELETE ALL COPIES AND, IF POSSIBLE NOTIFY THE INTENDED RECIPIENT.