UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-33426 |
| | § | |
| Gulfstream Trucking, LLC | § | CHAPTER 7 |
| | § | |
| DEBTOR | § | CHIEF JUDGE DAVID R. JONES |
| | § | |

**KAYO FORTUNE, LLC'S
RESPONSE TO TRUSTEE'S MOTION FOR SHOW CAUSE ORDER [Doc. 85]**

COMES NOW, Kayo Fortune, LLC, a creditor in the above referenced case ("Kayo"), and submits this Response (this "Response" to Ronald J. Sommers', Chapter 7 Trustee ("Trustee Sommers") Motion for Show Cause Order [Doc. 85] (the "Motion").

## TABLE OF CONTENTS

**I.    INTRODUCTION** ..................................................................................................... 2

**II.   PROPOSED FRAMEWORK FOR ANALYSIS** ........................................................ 4

**III.  COMPARISON OF INTERESTED PARTIES & POTENTIAL DEFENDANTS** .................. 7

**IV.   TRUSTEE SOMMERS ADVERSE ACTIONS TOWARDS PLAINTIFF** ............................... 9

**(i)    Failure to Identify the Debtor's True Name.** ............................................................ 10

**(ii)   Failure to Permit Questioning of the Debtor at the §341 Meeting.** ........................... 11

**(iii)  Failure to Collect Known Assets of the Estate.** ..................................................... 12

    **a.   Failure to Pursue Semi-Tractors and Trailers** ................................................... 12

    **b.   Failure to Report Theft of Estate Property.** ....................................................... 15

    **c.   Failure to Make Insurance Claims for Lost Estate Property** ............................... 15

    **d.   Failure to Take Civil Action for Conversion or under §362 or §542** ................. 15

    **e.   Failure to Pursue Other Entities in which Debtor may have an Interest.** .......... 15

    **f.   Failure to Collect on Amounts Owed to Debtor** ................................................ 15

    **g.   Failure to Obtain Assets Discovered by Kayo and Non-Disclosure of Assets by Debtor** . 16

1

h.      **Failure to Pursue Diesel and Bio-Fuel Tax Credits**. ..............................................17

**(iv)**    **Unnecessary Addition of Administrative Expense**. ...................................17

**(v)**     **Failure to Subpoena**. ................................................................................18

**(vi)**    **Failure to Notify Kayo's Counsel of Gulfstream Trucking Assets**............................18

**(vii)**   **Lack of Action on False Oaths**................................................................19

**V.**      **KAYO'S EFFORTS TO ADDRESS ITS CONCERNS DIRECTLY WITH TRUSTEE SOMMERS** ...........................................................................20

**VI.**     **TRUSTEE SOMMER'S FAILURE TO ARTICULATE A LEGITIMATE, NON-DISCRIMINATORY BASIS FOR HIS FAILURES TO ACT** .................................22

**VII.**    **CONCLUSION** ...........................................................................................22

## I.      INTRODUCTION

1.    The Motion completes the trilogy. First, there was the response of George Moncada ("Moncada"), filed on June 14, 2020, to Kayo's motion to compel Moncada's responses to discovery propounded upon Defendant Moncada in the adversary proceeding *Kayo Fortune, LLC. v. Moncada* (Case No. 19-03626) (the "Adversary Proceeding") in which a cross-motion for sanctions was filed by Moncada within that response. Second, there was the emergency show cause motion filed on June 24, 2020, by Trustee Williams in the related and jointly administered case *In re Gulfstream Trucking, LLC* (Case No. 19-36569)(the "Gulfstream Case")[Gulfstream Case Doc. 43]. And, hopefully finally, there is this Motion filed on June 28, 2020 in this case the "Moncada Case").

2.    All of the above motions and cross-motions are directed at Kayo Fortune, LLC, the largest creditor in both the Gulfstream Chapter 7 and the Moncada Chapter 7. The factual recitations of Kayo's responses, and supplements thereto, together with the analysis therein, are incorporated by this reference. [Gulfstream Case Docs. 44, 50, 51; Adversary Case Doc. 35]. Each of these motions and cross-motions, comprised together, and perfectly timed to create time pressure on Kayo's counsel at the end of the discovery period, and with dispositive motions due

**Kayo's Response to Motion to Show Cause**

in the Adversary Proceeding, all raise the same issues. The coordinated attacks by Mr. Probus (counsel for the Moncada, Defendant in the Adversary Proceeding, but very clearly stating not to be counsel for Moncada in this Moncada Case), Trustee Williams (Trustee in the Gulfstream Case) and his counsel (Ms. Catmull and Ms. O'Connor), and now Trustee Sommers (Trustee in this Moncada Case) and his counsel (Mr. Myers) demonstrates the collective defense that will be raised in an attempt to justify the inequitable treatment of Kayo Fortune, LLC. It is as if the trustees have been working their best and hardest for a year to make certain that these are no assets cases when the debtor walked-in the first day identifying more than $500,000 in assets available.

3.   Kayo is owned completely by Mr. Markus Wheaton ("Wheaton"). Mr. Wheaton is a 29-year old African-American man. Mr. Wheaton was 27-years old and playing wide-receiver in the NFL at all times relevant to the events giving rise to both Chapter 7 cases.

4.   Kayo, through its counsel, has communicated to all of the above named six individuals, that Mr. Wheaton believed that he was receiving disparate treatment by the trustees in both cases because of his race. All actions taken by both trustees have been consistently adverse to Wheaton's interest.

5.   Kayo requests that the Court review all of the briefing, and all of the exhibits submitted therewith, in the trilogy of motions attacking Mr. Wheaton and his counsel, and it will not find one single document penned by any of the above named six lawyers in which: (i) there is a single denial of the allegation that Mr. Wheaton is being treated differently; or (ii) there is even an attempt to set forth a legitimate, non-discriminatory reason for their actions. These omissions are striking, given the amount of ink spilled on this topic.

**Kayo's Response to Motion to Show Cause**

6.   Kayo never sought to put these issues before this Court. Kayo sought, through private letters and e-mails to the above experienced lawyers, to obtain some semblance of communication, and cooperation. It was the above named attorneys that have burdened this Court with these issues. Plaintiff's counsel does not believe this is the forum to address these issues, and certainly not in the form of a motion to show cause as to why requesting a discussion of possible discrimination on the basis of race and request for equal treatment (forcing an African-American man to incur additional and further legal fees and expense) should be subject to censure and sanction. The real question requiring an explanation is why six lawyers, all in coordination and syncopation, decided to bring these motions before the Court. The acts of which they complain date back months. There must be something more to it. And, it is that question of why, that inherently raises the question of race, compounded by not a single denial or statement of a single reason for the actions and inactions of which Kayo has privately complained in its letters and e-mails that have been attached as exhibits to all of these now public filings. Kayo has simply sought for the trustees to check themselves to assure that Mr. Wheaton's race is not a factor in the adverse actions being taken by the trustees against him, and are legitimate expressions of Kayo's desire that the trustee's always act in an equal and unbiased manner with respect to creditors equally. The trustees have chosen to publically air Kayo's articulated grievances rather than to deal with these issues privately and directly with Kayo and Mr. Wheaton.

## II.   PROPOSED FRAMEWORK FOR ANALYSIS

7.   In attempting to respond to this three-front war being imposed by the trustees of the two Chapter 7 estates, a method to evaluate the emotional presentation of the facts is needed to rationally address the true issues. Drawing from the employment discrimination realm, and

merely as an example of the flawed reasoning of the Motion, and the two previous volumes, the *McDonnell Douglas* burden shifting analysis is a starting point.[1] <u>See</u> *McDonnell Douglas Corp. v. Green*, 411 U.S. 792. Under the *McDonnell Douglas* frame work, Kayo and Mr. Wheaton would first need to show Mr. Wheaton is a member of a protected class (not denied) and an action taken that was adverse to his interest (there have been plenty). The BURDEN then would shift to the trustee to articulate a legitimate, nondiscriminatory reason for that action. That would be where the analysis would stop in this case.  No one has ever put forth a non-discriminatory reason – without a non-discriminatory justification ever articulated, the conclusion is that the adverse action was based upon illegal racial discrimination. There is not a need for the analysis to proceed further to shift of the burden back to Kayo to demonstrate that the non-discriminatory reason articulated is pre-text for racial animus. The final step is unnecessary when a legitimate, non-discriminatory basis is never set forth by Trustee Sommers.

8.   The answer to these motions is simple. Upon Kayo raising questions of race and disparate treatment, the trustees should have provided an answer as to why they were taking the actions they were taking.  Instead, the trustees continued to block Kayo's requests for information, continued to take no action to recover estate assets that would benefit Kayo, and continued to allow the real wrong-doers (Mr. Moncada and Charles "Chuck" Dorrity) to flee with the assets.

9.   Without a single attempt to justify their actions on a non-discriminatory basis, they have no claim to having been harmed by demands that they do so. Any attempt now to set forth a non-discriminatory reason will be evidence of pre-text in and of itself. The time for doing so was when these matters were being privately addressed, and not before the Court.  Rather than

---

[1] Kayo is not advocating for the application of *McDonnell Douglas* in the context of these cases. There are many flaws in the analysis detrimental to the complaining party. However, as a format for analysis, given the facts in this case, it is a convenient reference to demonstrate the absurdity of the show-cause motions raised in all three cases.

**Kayo's Response to Motion to Show Cause**

discussing the issues with Kayo, the trustees came to the Court seeking punishment for Kayo for simply saying that it appears that you are treating an African-American differently than others without providing an explanation. If requesting a non-discriminatory basis be articulated is subject to punishment, then the battle against equal treatment before the tribunal is lost. Even the mere possibility of such sanctions (and the cost and expense of responding to motions such as this) will serve only to chill other parties from ever addressing these issue and will allow any unconscious bias of those with power in the bankruptcy system (e.g. appointed Chapter 7 trustees) to percolate unchecked.

10. It is as if the trustees believe (i) that they should be immune from being required to make their decisions equally and without taking race into account, and (ii) a member of a protected class should not raise any questions of disparate treatment directly (through counsel) in private communications. It does not need to be explained to the Court that racially based decisions within the appointed trustee's office is not to be tolerated.

11. No less than a dozen times, Kayo's counsel has plead with Sommers and Myers to cease the disparate treatment, and to make Mr. Wheaton feel comfortable with the situation and his treatment. Just like Williams, Catmull, and O'Connor, not one attempt has been made by Sommers and Myers to smooth things over, to begin to have a working relationship with the creditor. They apparently believe that such common human decency is not necessary because the Court will bless their actions through the Motion. Such a blessing should not be given, and the thought that the Court would do so should be clarified to Mr. Sommers and Mr. Myers. It would seem that diversity training may need to become a requirement for those seeking to be on the trustee panel or serve as trustee's counsel.

### III.    COMPARISON OF INTERESTED PARTIES & POTENTIAL DEFENDANTS

12.        To evaluate Trustee Sommer's actions towards Kayo and its counsel, Mr.

Sommer's actions towards others in the case must be held-up for comparison:

<u>George Moncada</u>

1) Never disclosed his true name to Trustee Sommers

2) Failed to notify creditors of Jorge Moncada of this Chapter 7 petition.

3) Failed to disclose all storage units in the Petition.

4) Attempted to dissolve Gulfstream Trucking, LLC in violation of the stay.

5) Has repeatedly provided conflicting testimony heard by Sommers (e.g. Moncada testified that Gulfstream Trucking's trucks were missing at the initial §341 meeting, but testified in the adversary proceeding that he believed the trucks were located in Midland when he filed the Petition).

6) Has repeatedly stated that he is not in possession of documents essential for the determination of the assets of the estate.

<u>Charles "Chuck" Dorrity</u>

1) At the first §341 meeting, Moncada informed Sommers that Mr. Dorrity was wrongfully in possession of assets of the estate. Mr. Dorrity was in no uncertain terms accused by Moncada of having converted (stolen) assets (trucks and contracts) for his own personal purposes.

2) Moncada's testimony at his §341 meetings provided factual grounds for a determination that Mr. Dorrity was in violation of the automatic stay and grounds for action against Mr. Dorrity under §362.

<u>Kayo Fortune</u>

1) Kayo, a creditor and beneficiary of the estate, has not taken any action to violate the stay in this case. Kayo's state court case, and Kayo's search for Moncada's assets ceased upon filing the Petition.

2) Kayo has provided information in its possession and analysis of potential locations of assets to the Trustee.

3) Kayo notified Trustee Sommers of Moncada's liquidation of Gulfstream Trucking through filing of articles of dissolution

7

with the Wyoming Secretary of State in violation of the automatic stay – this information provided by Kayo led to the Show Cause Motion against Debtor, his son, and Debtor's counsel. [Doc. 54]

4) Kayo has requested action from the Trustee and his counsel to pursue the assets of the estate. As time went by with no action, the outrage of Kayo at the inaction, and demands for an explanation reflected the frustration and complete lack of understanding any legitimate basis for inaction by the Trustee.

Of those three parties, why is Kayo before this Court being asked to show cause? Where is the Trustee's action against Charles Dorrity? Trustee Sommers claims to have spoken with Mr. Dorrity nine months ago, but no action is taken. Mr. Sommers knows Mr. Dorrity has assets of the estate, but no §362 or §542 action or adversary proceeding against Mr. Dorrity has been commenced. Where is the action against the Moncada for providing false testimony and failure to disclose even his name properly?  Mr. Sommers has admitted that Mr. Moncada did not even file the petition under his legal name, but no action has been taken. Mr. Sommers admits that Mr. Moncada failed to disclose a storage unit, but no action has been taken. Mr. Sommers admits Moncada's testimony at deposition and his testimony at the §341 are contradictory, but no action has been taken.

**13.** Why is Trustee Sommers protecting Mr. Moncada and Mr. Dorrity? That is the question Kayo, Mr. Wheaton, and their counsel have been asking. No answers were ever forthcoming. There can be very few possibilities when Trustee Sommers is allowing nearly $400,000 of hard assets (trucks) and claims against Dorrity for damages arising out of his embezzlement, conversion and theft, on the table, unacted upon. But, Trustee Sommers sees fit to file this Motion against Kayo and Mr. Wheaton.[2] The Motion is designed solely to avoid the required

---

[2] The Motions attempt to split hairs, and claim that this Motion is directed at Kayo's counsel, but not towards Mr. Wheaton, is poppycock. In raising the issues of race, in an attempt to explain the inexplicable behavior and inaction

8

analysis of Trustee Sommer's failures and the reasons therefore. Is Trustee Sommers acting out of an interest to benefit of Mr. Moncada, Mr. Dorrity and possibly others? Is Trustee Sommers acting out of racial animus? Is Trustee Sommers retaliating for the raising of raising claims of possible racial discrimination? No non-discriminatory motive has ever been articulated and no answers to these questions have ever been provided, despite numerous opportunities for Mr. Sommers to do so.

## IV.    TRUSTEE SOMMERS ADVERSE ACTIONS TOWARDS PLAINTIFF

14. Kayo is the largest creditor in this case. Mr. Wheaton is the only creditor to have appeared personally at any proceeding in any of the cases. Mr. Wheaton is the only creditor that has provided information to the trustees for purposes of their "search" for assets.  Kayo intends to challenge a number of the proofs of claim in this case in the event assets are recovered.

15. 11 U.S.C. §704(a) imposes upon Trustee Sommers the following duties:

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate expeditiously as is compatible with the best interests of the parties in interest; . . .

(4) investigate the financial affairs of the debtor; . . .

(6) if advisable, oppose the discharge of the debtor;

---

of Trustee Sommers as described herein, Kayo's counsel is speaking for Mr. Wheaton after consulting with Mr. Wheaton and obtaining his view of the situation. Mr. Wheaton is not required, or even responsible, for personally addressing these issues with lawyers (such as Sommers and Myers) – that is what his counsel is for. Kayo does not stand to gain anything monetarily in this proceeding from raising these issues. Obtaining fair and equitable treatment, without bias as to race, is the sole goal. The Court need only review the letters counsel has written to Mr. Sommers and Mr. Meyers. Time after time, it is clear by use of "my client" in Kayo's counsel's letters, that Mr. Wheaton as well as his counsel can find no rational justification for Trustee Sommers inaction. The Trustee cannot try to separate Mr. Wheaton and Mr. Shearer for the convenience of trying to avoid the issue of the disparate treatment of Mr. Wheaton. If anything, this attempted separation merely demonstrates retaliation against the messenger identifying the issue (and such retaliation in-and-of itself is unlawful) It is as if Trustee Sommers is saying that he would have otherwise taken action if the race issue had never been raised. Such reasoning is racially biased on its face. There is no excuse ever provided by Mr. Sommers for his failure to collect the assets of the estate. There never is a denial by Mr. Sommers of the allegations of his disparate treatment of Mr. Wheaton. Trustee Sommers simply failed to take action to collect the assets of the estate, and when called out as to that inaction (and Kayo's attempts to get an explanation outside of racial animus), Mr. Sommers attacks Kayo and its counsel. If Mr. Moncada is to be believed, Mr. Dorrity should probably have been arrested on felony charges a year ago. But no action has been taken.

**Kayo's Response to Motion to Show Cause**

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

16. Based upon the conduct and actions (or inaction) of Trustee Sommers in this case, as well as the actions of Trustee Williams in the Gulfstream Case, Kayo began asking for explanations and asserting that Mr. Wheaton's race is a factor. Below are the acts of Trustee Sommers that gave rise to Kayo's concerns as to the lack of execution of his duties to Kayo.[3]

(i)   **Failure to Identify the Debtor's True Name.** At the very first §341 meeting in this case (the first in all of these cases), Trustee Sommers asked Mr. Moncada to produce his driver's license. Mr. Sommers examined that license. The Debtor's name on the petition is "George" Moncada. Mr. Moncada's license shows that his name is "Jorge" Moncada. Trustee Sommers did not take any action, and Kayo's counsel was not privy to the information on that driver's license. Later, in the adversary proceeding, Mr. Moncada refused to produce a copy of his license to Kayo during discovery. However, Kayo did receive a copy of Mr. Moncada's license from third-party discovery, and a copy of that license is attached as <u>Exhibit</u> 1. It was not until February 28, 2020 that Kayo learned the Debtor's real name. Sommers has known, or should have known, the Debtor's real name since August 2019, and if he did know, he did nothing to let the creditors of the estate that he administering know. Mr. Moncada amended his

---

[3] Kayo is a creditor in this case, a beneficiary of this estate. Kayo has not violated the stay or taken any inappropriate action against the assets of the estate.  This is unlike the debtor in this case who attempted to dissolve and liquidate an asset of the estate. Kayo is not like Mr. Dorrity, who the debtor has repeatedly alleged absconded with assets of the estate. In fact Kayo has sought for the trustees to pursue Mr. Dorrity. However, Mr. Dorrity (a 60-something white man) has not been pursued, but Mr. Wheaton and his counsel are being brought before this Court to justify their actions (writing letters demanding action on the trustees' duties, and requesting information as to why nothing is being done). Anyone can see the difference in treatment being meted out. The alleged "thief" fingered by the Debtor has been allowed a pass for more than a year by the trustees, but the compliant African-American creditor is being asked to pay sanctions for questioning why that alleged "thief" is being allowed to take assets from which he should be able to recover, and the trustees actively blocking Mr. Wheaton's attempts to assist in the pursuit. Did anyone notice the rioting on the streets only a month ago? The answer as to why that may have been occurring might be right in-front of you – systematic bias, couple with indignation at raising the issue and seeking to punish the mere raising of the issue. Things will not improve if the conversation is squelched and punished, and efforts to do so are symptomatic of the bias that exists.

**Kayo's Response to Motion to Show Cause**

petition and schedules two different times, but not once was he asked to declare that "George" was his alias and "Jorge was his name. This is not without consequence. The Debtor has held assets in the name Jorge that may not have been listed in the petition. And, the Debtor has incurred debt that may not have been listed, and there is even some debt in the name of Jorge that has continued to be paid and extended because the creditor appears not to have matched George Moncada to their debtor Jorge Moncada even after receiving notice of this proceeding. We will now never know the true situation, because Jorge has been provided a year lead time to move assets before anyone noticed.[4] Jorge "Leonel" and Jorge "Lionel" Moncada have owned assets, and incurred indebtedness (including both immediately before, and after the filing of the Petition. See Exhibit 2.[5]

     (ii)    **Failure to Permit Questioning of the Debtor at the §341 Meeting.** During Mr. Moncada's first two §341 meetings, Trustee Sommers limited Kayo's counsels ability to question Mr. Moncada. The basis for refusal during the first meeting was that Trustee Sommers had already identified numerous matters requiring amendments to the schedules.  At the third

---

[4]  Kayo had filed suit against Mr. Moncada in Harris County Texas State Court to collect the debt owed prior to filing of the petition in this case. Prior to filing that case, Kayo's counsel had information that led it to believe that George was an alias for Jorge. However, upon not seeing that Jorge was not listed on the Petition, Kayo's counsel stopped pursuing that line of research. It was not until Mr. Moncada responded to a Request for Admission in the Adversary Case on February 28, 2020 (8-months after the filing of the petition) that Mr. Moncada admitted to using the name Jorge. Not only has Jorge been provided time to move assets if he wished, Kayo has been prejudiced in its pursuit of collection of those assets, and the trustee did nothing about it.

[5] Mr. Moncada demonstrably lied, and knowingly so, in his deposition. Mr. Moncada admitted to using the name Jorge Lionel Moncada. Mr. Moncada was asked under oath "Have you ever used the name Jorge LEONEL Moncada?" His answer was "no". Mr. Moncada, under oath, was asked, "Have you ever conducted business – your business- using the name Jorge LEONEL Moncada?" Mr. Moncada's answer was "no." Set forth within Exhibit 2 are several real estate transactions (including Mr. Moncada's Certificate of Heirship from his mother's estate) in which he transacted business and executed documents filed in the real estate records of Nueces County using the name Jorge LEONEL Moncada. This Debtor cannot even tell the truth about his name. He has given false oath in his Petition, and has now done so under oath during his deposition. Why is this conduct being given a pass, but Kayo, the largest creditor, is being brought to show cause by Trustee Sommers? The tables are upside-down.

**Kayo's Response to Motion to Show Cause**

meeting, Kayo's counsel was not permitted to ask questions due to the pendency of the adversary proceeding.

(iii) **Failure to Collect Known Assets of the Estate.** During the initial months of this case, Trustee Sommers and his counsel spent months pursuing the potential of collecting approximately $150,000 in equity within the Debtor's <u>residence</u> as disclosed on the initial Petition. <u>See</u> <u>Exhibit</u> 3. The process commenced with Mr. Sommers first asking Debtor to remove the home from the list of assets because it was held by a trust, and Mr. Sommers began examining ways to access the Debtor's interest in the trust, even serving a subpoena upon the mortgage lender. See <u>Exhibit</u> 4 (Petition Amendment and Subpoena) [Docs. 21 & 22]. Apparently this effort was abandoned and the Trustee accepted Debtor's exemption analysis for the home's equity following the second amendment to exemptions on October 30, 2019 (four months after commencement of the case). [See Doc. 37][6]

a. **Failure to Pursue Semi-Tractors and Trailers** While Trustee Sommers and his counsel were unsuccessfully pursuing ways to avoid the Debtor's claimed exemption to $150,000 of residential equity, the trustee permitted nearly $400,000 of hard assets (trucks and

---

[6] It is difficult to fathom that the Trustee believed that this would be a no asset case when the initial petition and schedules identified $400,000 of trucks and equipment, together with unpaid promissory notes in the principal amount of $60,000, not to mention the Debtor's disclosure of possible claims against Dorrity and others. It took until November 7, 2019 (more than four months after the petition date) for Trustee Sommers to even acknowledge assets may be available for distribution to creditors. Trustee Sommers's appeared from the start to be seeking to declare this a no asset case, and delayed even looking for the missing assets. Kayo has no evidence that Trustee Sommers ever attempted to locate the trucks. As with other issues, Kayo's counsel cannot divine any reason why the trustee would have ever considered that no assets would be available. The only party who would benefit from a quick no-asset determination would be the person(s) who were in possession of property rightfully belonging to Gulfstream Trucking. Why would Trustee Sommers be acting for the benefit of that person, and not that of the creditors? The actions of Trustee Sommers gave Kayo concerns. Early in the process, the Debtor's son, Terry Moncada, stated to Mr. Wheaton that the Debtor was told to file Chapter 7 and the trustee would take care of the issues. These words, followed by Trustee Sommers's rush towards declaring no assets, raised Kayo's counsel's concern and extra close attention to the process was required. Kayo's counsel had to ask himself if Trustee Sommers was acting to protect Dorrity and others who had taken the assets. This concern was expressed to Ms. Catmull in January 2020. <u>See</u> <u>Exhibit</u> 6. Ms. Catmull responded simply writing "I do not agree with this." It is telling that a similar response of "I do not agree with this." Has never been provided in response to Kayo raising questions of racial bias.

12

trailers), and claims worth even more for conversion, embezzlement, breach of fiduciary duties, etc. to slip through his fingers. These truck and trailer assets were listed by the Debtor in the Petition and valued at $410,000. [Doc. 1 at ECF p. 16] The Debtor testified in his deposition in the adversary proceeding as follows:

> Q.    So in June of 2019 when you filed this Chapter seven petition, where did you believe the trucks owned by Gulfstream Trucking were located?
>
> A.    In Chuck Dorrity's yard that he told me was his.
>
> Q.    When did you realize the trucks were not in the yard?
>
> A.    I don't remember the exact date, but -- I don't know the exact date, but I did learn at some point that the trucks were no longer there.
>
> Q.    Did you learn about that before you filed Chapter seven or after you filed Chapter seven?
>
> A.    After.
>
> Q.    So when you filed Chapter seven, you believed that the trucks owned by Gulfstream Trucking were in the yard, leased by Charles Dorrity, in Midland?
>
> A.    That's correct.
>
> Q.    How many trucks do you -- did you believe were in the yard leased by Chuck Dorrity in Midland?
>
> A.    12, 13.  11, 12, 13, 14, right in that range. Right in that number.[7]

Trustee Sommers never took any action to secure the trucks. Given the rolling-stock nature of these assets, Trustee Sommers needed to act quickly to secure the assets and prevent anyone from absconding with assets of the estate. No action was taken whatsoever.

Months went by, and then on November 12, 2019, Debtor's counsel informed the Trustee that the truck assets, and business contracts, taken by Mr. Dorrity may be in the process of being sold by Mr. Dorrity through his daughter's company, TNM Oilfield Services. [Exhibit 7] Trustee

---

[7] Trustee Sommers has acknowledged that this testimony is different than he recalls at the meeting. See Exhibit 5. However, he has taken no action for the providing of a false oath by the Debtor.

**Kayo's Response to Motion to Show Cause**

Sommers claimed to have spoken to Mr. Dorrity during August or September 2019, but did not take any action based on this information from Debtor's counsel.[8] In the e-mail he received from Debtor's counsel (Exhibit 5) Trustee Sommers was warned of the disposition of assets by Dorrity. Trustee Sommers also was advised that Kayo's counsel had not been made aware of these events. Trustee Sommers took no action to stop the disposition of assets, or provide the information to Kayo, who at the time was preparing to bring separate state court action against Gulfstream Trucking that had not yet sought Chapter 7 protection. Trustee Sommers never notified Kayo of this November 12, 2019 e-mail.

The evidence is clear that Mr. Dorrity was in possession of these assets. Exhibit 8 shows that title report for one of the trucks listed on Debtor's Petition, and shows TNM Oilfield Services obtaining insurance on that vehicle in November 2019. There is no doubt that Mr. Dorrity and his daughter's company were in possession of estate assets in November 2019. The Debtor advised Trustee Sommers at the very first §341 in August that Mr. Dorrity was in possession of estate assets. Trustee Sommers took no action against Mr. Dorrity or his daughter's company, despite having talked to him on the phone and learning that he was, or had been, in possession of estate assets.[9]

---

[8] Not only did Trustee Sommers fail to act, he also actively sought to slow any pursuit of Mr. Dorrity. First, he failed to forward the information to Kayo's counsel. Second, in response to receiving this information, Mr. Meyers, counsel to Trustee Sommers, responded with "Can we please get the contact information for the course, we need a bit more information. Thanks." More information? $400,000 of estate assets were at threat of being disposed of, and if done, likely would never be located again. But, the Trustee would not take action without even more information. This all was occurring in November 2019, five months after commencement of the case. Now, one-year after commencement of the case, no action has yet to be taken in either this case or the *In re Gulfstream Trucking* Chapter 7 to recover the assets or the proceeds from the sale thereof from Mr. Dorrity or his daughter's company.

[9] Kayo's counsel has asked repeatedly about information as to Mr. Sommer's knowledge of, and relationship to, Mr. Dorrity's extended family. Mr. Dorrity's daughter is married to JR Christy. JR Christy's mother is Tempie Hutton (or Tempie Bays). Both Mr. Sommers and Tempie Bays family members attended high school together, and Tempie has made an appearance as representing JR Christy and Kati Christy in the *In re Gulfstream Trucking* case in response to inquiring by Trustee Williams. Mr. Sommers has indicated that he has kept-up with his high school classmates, but has never disclosed his relationship with Ms. Bays. If the facts provided by Mr. Moncada are correct, Mr. Dorrity and his daughter, and her husband, have possibly committed a felony. Is Trustee Sommers not taking action to pursue felons because of his personal relationship with one of the felon's family? He will not answer the

14

**Kayo's Response to Motion to Show Cause**

      **b.**  <u>**Failure to Report Theft of Estate Property**</u>. At no point did Trustee Sommers ever contact law enforcement to report the assets listed on the Debtor's Petition as stolen.

      **c.**  <u>**Failure to Make Insurance Claims for Lost Estate Property**</u> Insurance policies were in place covering, among other things, the loss or theft of these trucking assets. At no point in time did Trustee Sommers ever file a claim with the insurance carrier to recover the value of the lost truck assets.

      **d.**  <u>**Failure to Take Civil Action for Conversion or under §362 or §542**</u>  At no point in time to Trustee Sommers take civil action against Dorrity or his family for the conversation of estate assets. At no point in time did Trustee Sommers take action against Dorrity under §362 or §542 to recover these assets.

      **e.**  <u>**Failure to Pursue Other Entities in which Debtor may have an Interest**</u>. Kayo has provided Trustee Sommers the names of other entities in which Debtor has owned an ownership interest.  Debtor has never explained whether such interest still remains. For example, Kayo has repeatedly asked Trustee Sommers to look into a company named IMH Bird Street Pharmacy in which Debtor held an ownership interest. During his deposition, the Debtor flat-out lied when asked about IMH Bird Street Pharmacy, stating that he had never heard of that pharmacy. This is untrue. <u>See</u> <u>Exhibit</u> 9.

      **f.**  <u>**Failure to Collect on Amounts Owed to Debtor**</u> In the Petition, the Debtor disclosed that he was owed $60,000, which loans were secured by a lien on equipment installed on trucks owned by third-parties, and which notes were in default. [Doc. 22 at ECF pgs. 10-11] Trustee Sommers has taken no action at all to collect on these notes.

---

question.  This is not a conspiracy theory.  There has to be some explanation for inaction in the face of $400,000 in assets being stolen. If not this personal relationship, the only other possible explanation is the race of Mr. Wheaton.

**Kayo's Response to Motion to Show Cause**

**g.   Failure to Obtain Assets Discovered by Kayo and Non-Disclosure of Assets**

**by Debtor**. Kayo, in reviewing Debtor's banking statements determined that Debtor was paying

for two storage units – one in Secaucus, New Jersey, and one in Solana Beach, California. The

Debtor's disclosures in the Petition were inconsistent. The Debtor claims $1,000 of property as

exempt siting its location in a storage unit [Doc. 1 at ECF pgs. 16 &24] The Debtor listed a

monthly expense of $81.33 for storage unit rental at Storage Mart. [Doc. 1 at ECF pg. 53].

However, when asked if a storage unit had been rented in the prior year, the Debtor answered

"No." [Doc. 1 at ECF pg. 56].  Even if this confusion in disclosure is adequate for disclosing a

storage unit at Storage Mart, it is completely inadequate disclosure of the storage unit used by

the Debtor at Solana Beach storage. The Debtor has paid approximately $215 per month for that

unit every month since 2015 (the furthest back bank statements were provided by Wells Fargo).

This is separate from the $81.33 monthly payment disclosed as an expense in the SOFA. The

$215 Solana Beach payment has been made every month, on time. Debtor has been late on every

other type of payment – cars, credit cards, and mortgage – but over those 5-years, not once has

the Solana Beach unit's rent been late. [See Exhibit 10] Eye-brows should be raised at that

pattern. Something of value must be in that unit.

Kayo provided this information to Trustee Sommers. What did Trustee Sommers do? He

called the Debtor and asked about the Solana Beach Unit and apparently received a story that

there was simply some furniture and surfboards in the unit. Trustee Sommers took the Debtor at

his word and took no further action. Why is this Debtor's word being treated as gold when (i) he

took action to attempt to dissolve Gulfstream Trucking in violation of the stay and he will not

even tell the truth as to his real name? Why is Kayo being questioned for raising race? Kayo is

certain that whatever was in that unit is no longer there. Once again, Sommers allowed assets of

the estate to disappear. When Kayo learned that Trustee Sommers had tipped-off the Debtor,

Kayo demanded action immediately be taken to preserve any information available from the

storage unit complex (e.g. Asking that security footage be preserved, asking for security access

code usage be preserved). No action was taken by Trustee Sommers to seek preservation of that

information from the storage unit operator, no action was taken to direct Debtor not to remove

the property in the unit, and no action was taken to seek to examine the contents of the unit.

   h. **Failure to Pursue Diesel and Bio-Fuel Tax Credits**. Kayo's counsel advised

Trustee Sommers that Moncada had not taken any diesel or bio-fuels tax credits for his 2018 tax

returns and suggested that Trustee Sommers look into the situation quickly, and the ability to

collect retro-active credits for bio-diesel credits under Schedule 3 to IRS Form 8849 was

expiring on August 11, 2020. Exhibit 11. Trustee Sommers has taken no action on this matter

other than to indicate he believed the matter belonged to Trustee Williams. And as with

everything else that has been handed to Trustee Williams, no action has been taken by him

either.

   **(iv)** **Unnecessary Addition of Administrative Expense**. Trustee Sommers advised

Kayo's counsel at the second §341 that his position was that the assets (trucks) were held by

Gulfstream Trucking and were not directly assets of the estate. Based upon that analysis, Kayo

prepared and filed a complaint in Midland County Court against Gulfstream Trucking, LLC, Mr.

Dorrity and others (not including the debtor) on November 25, 2019. Trustee Sommers obtained

authorization to place Gulfstream Trucking into a Chapter 7. [Doc. 50] Given the lack of action

by the Trustee from the commencement of this case through November 25, 2019, Kayo did not

know how long Trustee Sommers would take before getting around to filing the Chapter 7

petition. Trustee Sommers, however, filed quickly and the Chapter 7 of Gulfstream Trucking

17

commenced on November 26, 2019, staying Kayo's state court action.[10] Kayo had previously indicated its hesitance to agree to such a plan as it added an unnecessary layer of administrative expense and Trustee Sommers instead could merely vote the membership interests to remove Moncada as manager and appoint his own manager to collect the assets of the company. Instead a second trustee (Trustee Williams) and his counsel (Ms. Catmull and Ms. O'Connor) were added to the costs of administration of these estates. Kayo's thoughts on these additional expenses were transmitted to all of the attorneys involved at that point (Sommers, Myers, Casey, Williams, Catmull, O'Connor, and Probus).

Ostensibly, Trustee Sommers took such action to vest Trustee Williams with §542 authority to reclaim the trucks and other assets in the possession of Dorrity and possibly others. A nice idea in concept, however as has been addressed in *In re Gulfstream Trucking, LLC*, over the eight months Gulfstream Trucking has been in Chapter 7, Trustee Williams has taken no such action. Trustee Williams also has excused Trustee Sommers from being responsible for the

---

[10] The Petition and schedules for Gulfstream Trucking prepared by Trustee Sommers demonstrated that Trustee Sommers had conducted little or no work from the filing of this case through November 26, 2019 to ascertain the assets or liabilities of Gulfstream Trucking (100% of the equity being owned by the estate under Trustee Sommer's administration). The petition and schedules were hand-written and contained the word "unknown" more than 20 times. The asset and liability information in the Gulfstream Trucking petition and schedules was inconsistent with the information provided by Moncada in the petition and schedules in this case (it is impossible for the information in the petition and schedules in this case and in the Gulfstream Trucking case to be different when the same assets are being described and Sommers is using the information from this case to complete the petition in the Gulfstream Trucking case). The Gulfstream Tucking petition still has not been amended once and is in shambles.  Moncada was asked to make revisions to the Gulfstream Trucking petition and schedules by Trustee Williams. He did so, but placed his hand-written marks on top of Trustee Sommers hand-written marks, making the revisions impossible to comprehend. Mr. Moncada's mark-up has never been submitted to the record in *In re Gulfstream Trucking*, but those markings confirm the lack of accuracy in the petition and schedules completed by Trustee Sommers. A copy of Moncada's hand-markings are attached hereto as Exhibit 12. Further, Trustee Williams did not permit Kayo's counsel to question Moncada at the first Gulfstream Trucking §341 meeting due to the pending adversary proceeding. Trustee Williams did not permit Kayo to question Sommers (who completed the petition) because Trustee Sommers had already said he did not have the information to complete the petition accurately. Kayo sought to have Trustee Sommers available at the second §341, but Trustee Williams excused Sommers from further attendance Exhibit 13. The lack of accurate information for Sommers to use in completing the Gulfstream Trucking petition demonstrates clearly the Debtor's failure to maintain records, justifying dismissal of this case under §727(a)(3) and (a)(5). Kayo has repeatedly requested Trustee Sommers to join Kayo's §727 claim on this basis, but Sommers has refused to do so.

**Kayo's Response to Motion to Show Cause**

content of Gulfstream Trucking's schedules. How and why that has been allowed to occur when the answers in the Gulfstream Trucking petition are "unknown" is perplexing. Jorge (aka George) Moncada has not signed the Gulfstream Trucking schedules. The Gulfstream Trucking petition and schedules do not a single person responsible for their contents, yet creditors are subject to a stay. Kayo's counsel specifically requested that Trustee Sommers be present for the second §341 meeting so that questions could be asked as to the source of information used by Sommers in completing the Gulfstream Trucking petition and schedules. Even knowing that Kayo had questions for the person who filled-out, AND SIGNED, the petition and schedules, Trustee Williams would not require Trustee Sommers to respond to Kayo's questions at the §341. Trustee Williams only required Moncada to attend (which he did without counsel), and Kayo's counsel could not question him due to the pending adversary in which Moncada was represented by Probus. Kayo was not given the opportunity to ask one single question at the Gulfstream Trucking §341 meetings. The status of the Gulfstream Trucking Chapter 7, being the mess that the petition and schedules are in that case, is directly derived from Trustee Sommer's failure to investigate the debtor in this case before completing the petition for Gulfstream Trucking.

      (v)    **<u>Failure to Subpoena</u>**. Trustee Sommers has issued one third-party subpoena, which was to Moncada's mortgage lender in the unsuccessful, but time consuming, attempt to grab Moncada's home equity for the estate. No subpoenas have been issued to the obvious target – Mrs. Moncada, Terry Moncada (who's company received payments from Gulfstream Trucking, and who was constantly interjecting to feed Debtor answers at his §341 meetings (Terry seemed to know more about what happened, or at least the story of what happened, than the Debtor), Jose Moncada (Myers and Sommers asked Debtor about a split of earnings on real

estate sold by Jose and Jorge (George), but never followed up to see if Jorge had continuing

contractual beneficial interests with his brother in real estate or business ventures), and Wells

Fargo (the Debtor's bank). Even after looking at Debtor's driver's license, Sommers did not

subpoena a single financial institution seeking information as to accounts held in the name of

Jorge Moncada.

   **(vi)** <u>**Failure to Notify Kayo's Counsel of Gulfstream Trucking Assets**</u>. Before

Gulfstream Trucking was in Chapter 7, Sommers was notified of the possible sale of Gulfstream

assets by Dorrity. <u>Exhibit</u> 7. Trustee Sommers chose not to notify Kayo's counsel of that

information even though Debtor believed that Kayo's counsel should receive the information.

<u>Exhibit</u> 7.

   **(vii)** <u>**Lack of Action on False Oaths**</u>. Trustee Sommers examined Debtor's driver's

license and petition containing different names. Trustee Sommers observed the deposition of Mr.

Moncada in the adversary proceeding. Trustee Sommers has acknowledged that the Debtor's

deposition testimony regarding the missing trucks (quoted above) is inconsistent with the

Debtor's testimony at the §341 meetings in this case. <u>Exhibit</u> 14. Trustee Sommers

acknowledges Debtor did not disclose two storage units (seeking to conceal the Solana Beach

unit). Trustee Sommers has observed Moncada repeatedly change the listing and value of assets

(including his hand-written changes to the Gulfstream Trucking petition completed by Trustee

Sommers) and the inconsistencies between these sworn statements. Yet, Trustee Sommers has

taken no action against Mr. Moncada for making false oaths.

  **V.**  **KAYO'S EFFORTS TO ADDRESS ITS CONCERNS DIRECTLY WITH**
      **TRUSTEE SOMMERS**

17. Mr. Wheaton and Kayo's counsel believed that a direct conversation among Trustee

Sommers and his counsel, and Mr. Wheaton and his counsel, should be convened to discuss the

20

lack of movement by Trustee Sommers to take action to collect assets, investigate undisclosed assets and liabilities, investigate the financial affairs of the debtor, and to address undisclosed assets and falsities by Moncada, and the lack of documentation of Moncada's business affairs.

18. The call was requested by Kayo's counsel and occurred on June 18, 2020 with Wheaton, Shearer, Sommers and Myers present. Unfortunately, the call did not change Mr. Wheaton's or his counsel's view that Trustee Sommers was acting inconsistent with his obligations under §704, or the view that his adverse treatment of Mr. Wheaton was racially motivated. Mr. Sommers, essentially stated, that he thought Mr. Moncada should be allowed to amend his Petition so as to include his real name and the undisclosed storage unit (more than one-year after the commencement of the case). Kayo advised Mr. Sommers that there are known assets held in the name of Jorge and debt in the name of Jorge that had not been noticed of these proceedings, and an amendment would require a complete restart to this process that is more than a year old to properly notify all creditors the Chapter 7 of Jorge. Trustee Sommers indicated his view that an action for non-discharge under §727 would not be forth coming from him despite his knowledge of the intentional concealment of the debtor's real name and lack of documentation for any of the Gulfstream Trucking assets or business operations. He further indicated that he would not support a §707(a) dismissal for the delays in Moncada's disclosures, even though his real name had not been disclosed and had prejudiced creditors. When asked what it would take for the Trustee to support either of those actions, Trustee Sommers had no answer. Trustee Sommers could provide no answer as to why Trustee Sommers "tipped-off" Moncada to empty his Solana Beach storage unit knowing Wheaton's counsel intended to depose Mr. Moncada on this issue the following week. There was no answer as to why Trustee Sommers was not investigating other entities in which Moncada may have an interest such as IMH Bird Street, despite

Wheaton's repeated requests for such an investigation. There was no answer regarding claiming potential diesel and bio-fuel tax credits, other than Trustee Sommers expressing the view that the issue belonged to Trustee Williams.

19. The most egregious and shocking event was when Trustee Sommers was responding to a question directly propounded to him directly by Mr. Wheaton himself as to why there is no action to seek dismissal of this case under §707(a). In essence, Trustee Sommers tried to articulate a basis to say that a §707(a) dismissal was not in the best interest of Mr. Wheaton, and in addressing Mr. Wheaton, Trustee Sommers was disrespectful, condescending, and rude, and used a term with historical racial connotations. Mr. Wheaton is a 29-year old African-American man (who even at such a young age has traveled across the country playing football, and experiencing events across the continuum of racial prejudice throughout his life) left the call with even less confidence in the fairness in the administration of the estate, and even more convinced that racial bias and prejudice influencing Trustee Sommers administration of the estate.[11]

20. Kayo's counsel addressed the fall-out of this call by letter to Trustee Sommers and his counsel. See Exhibit 15.

## VI.  TRUSTEE SOMMER'S FAILURE TO ARTICULATE A LEGITIMATE, NON-DISCRIMINATORY BASIS FOR HIS FAILURES TO ACT

21. Not once during this entire process has Trustee Sommers or his counsel ever denied the existence of racial bias. NOT ONCE. Not once has Trustee Sommers or his counsel sought to address the issues through acknowledgement of the concerns, understanding of the concerns, combined with articulating a legitimate, non-discriminatory basis for Mr. Sommers actions. The

---

[11] Trustee Sommers also tried to explain that his inaction was actually a favor to Kayo that would benefit Kayo. How that was so, was not exactly clear. However, Trustee Sommers indications that he can hand-out favors is itself evidence of his practice of unequal treatment. Kayo is not asking for favors. In fact, Kayo is asking for the opposite - that is for all to be treated with fairness and equality within the bankruptcy process, and without bias or preference.

**Kayo's Response to Motion to Show Cause**

opportunities to do so have been numerous, and not once has an attempt ever been made by Trustee Sommers to attempt to right-the-ship.

### VII.    CONCLUSION

22. The asserted actions for which the Motion was filed against Kayo and its counsel, pale in comparison the disparate, and never justified, actions of Trustee Sommers. Trustee Sommers spent month hunting home equity, and allowed hard business assets to vaporize. Trustee Sommers added unnecessary administrative expense. Trustee Sommers has taken Moncada at his word, repeatedly, even knowing that he has lied about his name, the existence of assets in California, and the timing of the disappearance of the trucks, in addition to others. Trustee Sommers has taken no action against Dorrity, his daughter's company, or those owing on promissory notes.

23. Kayo is called to answer this show cause Motion. However, Mr. Dorrity has never been brought to this Court to explain where all of the trucks and assets have gone. One must ask why such different treatment. Racial bias and prejudice is certainly a strong possibility (the other possibility being Trustee Sommers is protecting Mr. Dorrity and his family due to prior personal relationships). If this conflict is the cause, it is not a legitimate non-discriminatory reason.[12]

24. In applying, for the sake of analysis only, the *McDonnell Douglas* burden-shifting steps, Kayo has shown Mr. Wheaton is a member of a protected class, and adverse action has been taken against him by Trustee Sommers. The burden then shifts to Trustee Sommers to explain his actions using legitimate, non-discriminatory reasons. Trustee Sommers has failed to do so. Trustee Sommers has never provided a single justification for any of the acts above of which

---

[12] Trustee Sommers was willing to try to collect from $150,000 of home equity (unsuccessfully), but he was not willing to try to collect $500,000 or more from Mr. Dorrity and others. There is no explanation that can be given for that decision.

**Kayo's Response to Motion to Show Cause**

Kayo has repeatedly complained over the last year. The Court need not reach the third-step of analyzing those justifications for pretext. Trustee Sommers has failed to meet his burden of simply articulating a legitimate, non-discriminatory basis for his acts. This failure by Trustee Sommers ends the analysis with the conclusion of racial bias and prejudice being a motivating factor in his conduct.

25. Further, the Motion demonstrates nothing more than retaliation against Mr. Wheaton for raising the issues of race, which should have been addressed directly long ago by Trustee Sommers privately, without burdening this Court. Retaliation for raising issues as to fair treatment itself is discrimination on the basis of race. Kayo has addressed the chilling effect of seeking sanctions such as those requested in the Motion in its other writings in *In re Gulfstream Trucking*. That analysis is equally applicable to this case. Participants in the bankruptcy process should not be subjected to punishment, cost, and expense for asking for the basis for lack of action or adverse action directed at one creditor.

26. Kayo has done nothing wrong. The Debtor has lied. Dorrity has converted estate property. The "bad-guys" in this case are being allowed to escape by Trustee Sommers. It is hard to believe he would allow such an escape if an African-American man had stolen $400,000 of trucks.

27. Kayo has provided information for the trustee to act upon (the location of a storage unit, the possibility of continuing interests in businesses, the use of aliases, potential tax credit, possible locations of trucks, and potential defendants for actions by the trustee to recover assets). Yet, Kayo is stymied at every turn, and the trustee refuses to act.

**Kayo's Response to Motion to Show Cause**

28. All of Kayo's increasing frustrations can be traced directly to Trustee Sommer's failures identified above. It is Trustee Sommers who should be called to account for his mishandling of this estate, and the bias against Mr. Wheaton that he has repeatedly displayed.

29. Kayo's counsel has spent a significant amount of time trying to identify why Trustee Sommers (as well as Trustee Williams) would be acting in these manners and complicating the administration of these estates by quarrelling with the largest creditor. Kayo's counsel has requested that both trustees provide an explanation, and neither will do so. Assets of been allowed to dissipate and Kayo's probability of receiving any recovery has been vaporized with them, and the trustees have only increased Kayo's costs of participating in this process with decreasing chance of recovery. The trustees seem to want to bleed Kayo even further for demanding that the trustees collect the assets of the estate. There is simply no basis that can be articulated for the acts of Trustee Sommers that is legitimate, non-discriminatory, or non-retaliatory. There is no explanation other than racial bias, or unethical conduct arising out of conflicts or protection of potential defendants.

30. Kayo did not stand to improve its position in any manner in this case by raising these issues. Requesting equal treatment in the process was not going to change Kayo's priority to distributions for the estate. In fact, raising these issues has done nothing but increase the cost to Kayo in this case. The questions as to bias and prejudice were raised because equality in treatment is required, and inequality cannot be accepted. Financial gain or not, the demand for equal treatment must be raised when bias and prejudice is being perceived and no corrective action is taken, or the claim even being acknowledged, by those empowered by the system. Sommers has failed to articulate what goal he believes Kayo was seeking to attain by taking-on

Kayo's Response to Motion to Show Cause

these weighty issues. Kayo stands to gain nothing in this proceeding other than the fair and equal treatment that Mr. Wheaton is entitled to receive.

31. If, at the beginning of this proceeding, Trustee Sommers and Mr. Myers spent even a portion of the time they spent crafting the Motion and its exhibits on locating Mr. Dorrity and demanding the return of property of the estate, it is likely these issues would not be before the Court. Had Trustee Sommers explained his actions/inactions with a legitimate, non-discriminatory basis, these issues may not have arisen.

32. Trustee Sommers has failed to fulfill his obligations under §704(a): assets have not been collected, the financial affairs of Moncada have not been investigated (thus explaining the lack of information in the Gulfstream Trucking schedules), he will not oppose the discharge of a debtor that has been knowingly untruthful about something so simple as his name, and Trustee Sommers has not provided information as to the reasons for his actions.

33. Seventeen semi-tractors have been stolen while they were within Trustee Sommers authority, and not one single police criminal complaint has been filed during the year the assets have been property of a Chapter 7 estate. Trustee Sommers should be made to explain (i) why immediate action was not taken at the beginning of this case against Dorrity when assets where known to be in his possession and control; (ii) why no action has ever been taken against Dorrity; and (iii) why no action was taken to secure the trucks, file claims for insurance, or report the vehicles stolen. No explanation for these significant failings has ever been given. These failures served only to aid and conceal a known felony and the inaction was intentional. Both Trustee Sommers, and Trustee Williams, should show cause as to why they are not accessories-after-the-fact as to the theft of Gulfstream's truck and trailer assets. On day-one, the Debtor stated that nearly $500,000 in property had been stolen, and nothing was done other than to allow

the thief time and space to further conceal the assets and the crime. A year has no gone by and the chance of locating these assets has significantly diminished.

34. Fundamentally, Trustee Sommers bears all the fault for these matters coming before this Court. Trustee Sommers's bias and prejudice reflected in his actions and inactions, including his failure to ever articulate a legitimate non-discriminatory basis, and his use of improper and unjustified language directly to Mr. Wheaton, completely absolve Kayo of any blame for vocally raising these issues of bias in his administration. The Motion is nothing more than retaliation for Kayo having asserted Mr. Wheaton's right to equal treatment in this process and should be rejected as nothing more than a continuation of bias and prejudice, and seeking to punish Kayo and its counsel for demanding equal protection and equal treatment.

35. Sommers has never articulated a non-discriminatory basis. Trustee Sommers every action has been against the interest of Kayo and for the benefit of Moncada. Trustee Sommers has failed to exercise his powers to retrieve assets. Trustee Sommers has looked the other way in the face of blatant lies and misrepresentations by Moncada. Trustee Sommers let $500,000 of assets disappear under his supervision. As noted in Kayo's summary judgment motion in the adversary proceeding, this case has all of the hallmarks of a "bust out" bankruptcy in which the enterprises was designed to fail and to pilfer investor funds. Trustee Sommers actions are consistent with those a complicit trustee would take in such a bankruptcy – for example, failing to pursue assets and bring action against the individuals identified as converting estate assets. Trustee Sommers actions also are consistent of those of a trustee failing to fulfill his obligations under §704.

36. The repeated nature of these failures (even after repeated warnings and pleas from Kayo). Only Mr. Sommers knows the answer, and he is not supplying one. Until an answer is supplied,

using *McDonnell* burden shifting, the answer must be either an illegitimate one or one motivated by racial animus. Trustee Sommers Motion must be denied.

Dated July 18, 2020          Respectfully submitted,

_____
SHAWN E. SHEARER
The Law Office of Shawn Shearer, P.C.
3839 McKinney Ave. #155-254
Dallas, TX 75204
shawn@shearerlaw.pro
Phone: (214) 272-9533
ATTORNEY FOR KAYO FORTUNE, LLC

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, was served on all parties receiving notice via the CM-ECF system.

<u>/s/ Shawn Shearer</u>

**Kayo's Response to Motion to Show Cause**